Peter David WINEGARNER, Appellant

v.

The STATE of Texas, Appellee.

No. 05–04–00849–CR.

Court of Appeals of Texas,
Dallas.

March 22, 2006.

Thomas G. Pappas, Michael P. Gibson, Burleson Pate & Gibson, LLP, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Criminal District Atty., Marisa P. Elmore, Asst. District Atty., Dallas, for State.

Before Justices FITZGERALD, LANG-MIERS, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

This is a family violence case. The appeal is limited to a single evidentiary issue: whether the trial court correctly excluded evidence proffered by appellant to impeach the complaining witness, his wife. We conclude the trial court erroneously excluded the impeachment evidence and appellant was harmed by the exclusion. Accordingly, we reverse the trial court's judgment and remand this cause for a new trial.

### BACKGROUND

The evidentiary issue arose out of an exchange during Pamela Winegarner's direct examination by the State. Ms. Winegarner testified that appellant assaulted her in their home and that she called 9–1–1. She further testified that while she attempted to speak to the 9–1–1 operator, appellant picked up another phone and reported his own version of the altercation to the operator. In sum, appellant told the operator that his wife had been the aggressor; she had hit him first. The exchange at issue reads:

Q. Now what was he saying on the phone when he was talking to 9–1–1?

A. From my understanding all I detected that he was basically just trying to stop me from talking to the operator by drowning me out, loud talking me, talking about—he said stuff like I hit him first. I attacked him first and I have to remember. *I don't know about some people, but men these days hit women. And I'm not crazy enough to hit a man or start a fight. That's why I always leave.*

Q. But he was saying at that time that you had hit him; is that correct?

A. On the tape that I had heard a little while ago, my recollection and everything, yes, he was trying to say that I attacked him. Yes.

(Emphasis added.)

The defense sought to impeach this testimony in two ways: (1) by cross-examining Ms. Winegarner concerning her plea in an assault case involving her former husband some fourteen years before, and (2) by offering testimony from her former husband himself concerning their altercation. The trial court excluded the former evidence because its remoteness rendered it more prejudicial than probative; the court excluded the latter evidence based on the prohibition against using extrinsic evidence of specific instances of conduct for impeachment.

### STANDARD OF REVIEW

A trial court may exclude or admit evidence before the jury, and an appellate court will not set aside the trial court's rulings absent a showing in the record that the trial court has abused its discretion. *Montgomery v. State,* 810 S.W.2d 372, 379 (Tex.Crim.App.1990). The court of criminal appeals has set forth the test for such an abuse of discretion:

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather,

it is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable.

*Id.* at 380.

### OPENING THE DOOR TO REMOTE EVIDENCE

■ The trial court's rulings accurately reflect the general limits placed on impeachment by the rules of evidence. *See* TEX. RS. EVID. 609(b), 608(b). However, a well-settled exception to the impeachment rules arises when a witness testifies and leaves a false impression as to the extent of her prior arrests, convictions, charges against her, or "trouble" with the police generally. *See Prescott v. State,* 744 S.W.2d 128, 131 (Tex.Crim.App.1988). When the witness leaves this kind of false impression during her direct examination, she is deemed to have "opened the door" to an inquiry into the veracity of her testimony. *See id.* That inquiry may include testimony concerning the witness's past criminal history that would otherwise have been irrelevant and inadmissible. *Id.* Such evidence becomes admissible on cross-examination to "dispel the false impression" created by the witness's testimony on direct. *Id.* Moreover, the impression may be dispelled by this evidence, regardless of the nature of the conviction or its remoteness in time. *Ochoa v. State,* 481 S.W.2d 847, 850 (Tex.Crim.App.1972).

#### Admissibility of the Evidence

■ Our first inquiry, therefore, concerns whether Ms. Winegarner "opened the door" to impeachment evidence concerning her earlier plea in a domestic violence case. She did so if her testimony left a false impression concerning that past criminal history. We find no ambiguity in the relevant testimony. Ms. Winegarner stated unequivocally that she would not hit a man or start a fight—instead, she *always* leaves when an altercation begins. Moreover, Ms. Winegarner went out of her way to make this declaration: she had been asked what her husband said on the 9-1-1 tape, and she voluntarily interjected this self-serving statement concerning her commitment to avoiding violence. Outside the jury's presence, Ms. Winegarner testified to an altercation in 1990 with her ex-husband. In response to whether she "hit" him, she stated she "defended herself." She was charged with criminal assault. According to Ms. Winegarner, she "plead to a deferred adjudication on the assault charge" and received "three months" probation. We can only conclude, therefore, that Ms. Winegarner did leave the jury with a false impression as to her past criminal conduct. Accordingly, she opened the door to impeachment on that subject, and the remote plea became admissible. *See Prescott,* 744 S.W.2d at 131 (evidence concerning witness's past criminal history becomes admissible on cross-examination to "dispel the false impression" created by witness's testimony on direct). We conclude the trial court's reliance on the general rule concerning remote evidence was misplaced in this case. The court's prohibition of cross-examination based on evidence of Ms. Winegarner's earlier criminal conduct was unreasonable and, thus, was an abuse of its discretion. *See Montgomery,* 810 S.W.2d at 380.

The rules surrounding "opening the door" to otherwise inadmissible evidence have traditionally been limited to cross-examination of the witness who actually opened the door and created the false impression. Thus, when a witness left an impression that the defendant was not the type of person to commit the charged crime, the opponent could only correct the false impression through cross-examination of that witness, not by calling other

witnesses to correct the false impression. *See Wheeler v. State,* 67 S.W.3d 879, 885 (Tex.Crim.App.2002). However, the court of criminal appeals has recently addressed this issue in a narrower context. In *Daggett v. State,* 187 S.W.3d 444, 446 (Tex. Crim.App., 2005), the defendant was originally charged with sexual assault of two sixteen-year-old girls, but the cases were severed for trial. The defendant testified at the first trial. When asked about the facts of the charged assault, the defendant stated "I would not do something like that," and "I have never done anything of that sort with a sixteen year old girl, period." *Id.* at 448. The trial court had earlier allowed the second complainant to testify as to her own alleged assault, based on the State's argument that the girl's testimony was evidence of a common scheme or plan. *Id.* at 447. The court of appeals rejected the common scheme or plan argument, but concluded the defendant had opened the door to the testimony of the second complainant through his specific denials. *Id.* at 450. The court of criminal appeals agreed the defendant had opened the door to evidence of his conduct with the second complainant to rebut his statements disavowing any of the charged sexual conduct with minors. *Id.* at 454. In a lengthy footnote, the court stated:

> When a witness makes a broad statement of good conduct or character on a collateral issue, the opposing party may cross-examine the witness with specific instances rebutting that false impression, but generally may not offer extrinsic evidence to prove the impeachment acts. Where, as here, the defendant's statement of good conduct is directly relevant to the offense charged—i.e., "I would never have sexual relations with a minor"—the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement. This is not impeachment on a collateral

matter. The statement of good conduct goes to the "heart" of the matter.

*Id.* at 454 n. 24. In appellant's case, Ms. Winegarner's denial was directly relevant to the offense charged and the defense raised to that charge. Thus, the State could offer extrinsic evidence rebutting her statement. We conclude the trial court erred in excluding impeachment evidence from Ms. Winegarner's former husband.

### *Harm Caused By Excluding the Evidence*

■ Our second inquiry concerns the harm, if any, caused by the erroneous exclusion of this impeachment evidence. We disregard non-constitutional error unless it affects the party's substantial rights. TEX. R.APP. P. 44.2(a). In this case, appellant and Ms. Winegarner gave the jury two entirely different versions of the altercation between them. Appellant's defensive theory asserted that Ms. Winegarner had been the aggressor. But Ms. Winegarner testified that she would never hit or start an argument with a man; she would always leave if an altercation were to begin. Her statement directly contradicted appellant's defensive theory. And her statement left a false impression concerning her past conduct. If jurors had been shown the conflict between Ms. Winegarner's testimony at this trial and her past conduct, then it is certainly possible they would have evaluated her credibility differently.

This case was about credibility. The State acknowledged as much in its closing argument, stating:

> [Y]our job is very important here and the most important part of it is for you to determine the credibility of the witnesses you've heard from. . . . Y'all have got to determine who is telling you the truth. That's your starting point here. It matters who is telling the truth.

As the importance of a witness's credibility increases, so does the importance of the opportunity to impeach that witness's credibility. *See Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App.1992). We conclude the inability of the defense to impeach Ms. Winegarner with evidence of her past criminal conduct affected appellant's substantial rights in this case.

## CONCLUSION

We sustain appellant's point of error, reverse the trial court's judgment, and remand this cause for a new trial. We do not reach the State's cross-point.

MAZZANT, J. dissenting.

Dissenting Opinion by Justice MAZZANT.

The question in this case is whether the trial court abused its discretion when it (1) determined that appellant's counsel could not cross-examine the complainant about her plea in a prior assault case and (2) excluded impeachment testimony from the complainant's former husband regarding the assault. The majority concludes the impeachment evidence was erroneously excluded. Because I conclude no abuse of discretion has been shown, I would overrule appellant's issue and affirm the conviction.

A trial court has wide discretion in its decision to admit or exclude evidence. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We must review the trial court's ruling in this case under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153 (Tex.Crim.App.2001). Therefore, we may reverse only if the trial judge's decision was "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992). The mere fact the trial court decided a matter within its discretionary authority in a different manner than we would does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App. 2003). Our role is limited to determining whether the record supports the trial court's ruling. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

The record shows that appellant and the complainant, his wife, became involved in an argument over money. The complainant testified that the argument escalated until appellant pinned her to the washing machine and shook her, in her words, "like a rag doll." At some point during the altercation she hit her head, possibly on a cabinet or an iron; she was not sure. Appellant then grabbed her wrists, and, as she tried to wrench herself free, she tore a fingernail. She eventually got away from appellant's grasp and called 9-1-1 emergency. While she was on the phone with the 9-1-1 dispatcher, appellant attempted to interfere with the call by simultaneously talking to the dispatcher on a second phone line. Police later arrived and arrested appellant.

The audiotape of the 9-1-1 call was played for the jury. During direct examination, the State questioned the complainant as follows:

Q. At the time you called 9-1-1, tell us what happens at that point? What's going on in your house?

A. Well, I'm calling them. I'm telling them basically please send me some help. My husband has attacked me. He's beating up on me. I'm bleeding. Somebody please help me. At the same time he is overtalking and just drowning me out like he's done so many—just drowning me out. Basically would not allow me to talk clearly with the operator on the radio on the phone.

Q. Did he realize that you were calling 9-1-1?

A. Yes, he did I believe.

Q. Now what was he saying on the phone when he was talking to 9-1-1?

A. From my understanding all I detected that he was basically just trying to stop me from talking to the operator by drowning me out, loud talking me, talking about—he said stuff like I hit him first. I attacked him first and I have to remember. I don't know about some people, but men these days hit women. And I'm not crazy enough to hit a man or start a fight. That's why I always leave.

Q. But he was saying at that time that you hit him; is that correct?

A. On the tape that I had heard a little while ago, my recollection and everything, yes, he was trying to say that I attacked him. Yes.

Defense counsel argued that she should be allowed to cross-examine the complainant about a prior assault charge and protective order because her testimony on direct—"And I'm not crazy enough to hit a man or start a fight. That's why I always leave"—left a false impression in the minds of the jurors. On voir dire, outside the presence of the jury, the complainant admitted that, in 1989, she had been arrested for assault during an altercation with her former husband and successfully completed a period of deferred probation. Weighing the limits placed on such evidence by rule 609 of the Texas Rules of Evidence, the trial court concluded the prejudicial affect of the fourteen-year-old charge outweighed its probative value.

After the State rested, defense counsel examined the complainant's former husband outside the presence of the jury. He testified that, in 1990, the complainant hit him on the face and was violent towards him. Defense counsel argued that this line of testimony was admissible for impeachment of the complainant's testimony under rule 608 of the Texas Rules of Evidence, and as a prior inconsistent statement under rule 613. The trial court disagreed, finding rule 608(b) prohibited the admission of such evidence.

As a general rule, prior offenses are inadmissible for impeachment purposes unless the offense resulted in a final conviction for either a felony or a crime involving moral turpitude and the conviction is not too remote in time. *See* Tex.R. Evid. 608, 609; *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex.Crim.App.1972). An exception applies, however, when a witness makes statements concerning his past conduct that indicate he has never been arrested, charged, or convicted of any offense. *Prescott v. State*, 744 S.W.2d 128, 131 (Tex.Crim.App.1988). If a witness "creates a false impression of law abiding behavior, he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.1993). However, courts construe the "false impression" exception narrowly. *See James v. State*, 102 S.W.3d 162, 181 (Tex.App.-Fort Worth 2003, pet. ref'd). "In order to open the door to use of prior crimes for impeachment, the witness must do more than simply imply that he abides by the law; he must in some way convey the impression he has never committed a crime." *Id.*

Appellant argues that the complainant's statement, "And I'm not crazy enough to hit a man or start a fight. That's why I always leave," created a false impression of law-abiding behavior which, in turn, opened the door to impeachment regarding her prior criminal history. I disagree. The complained-of statement was not an omission or false response to a direct question about the complainant's prior trouble

with the law or experience with the criminal justice system. As a general rule, a witness opens the door to impeachment only when he has been asked a specific question concerning the extent of his prior arrests, charges, convictions, or trouble with police. *Prescott,* 744 S.W.2d at 132. In response, the witness completely or partially fails to properly identify the extent of the prior "troubles." *Id.* The situation in this case is different. When viewed in context, the complainant's statement could be seen as part of a broader discussion regarding what appellant was saying on the 9-1-1 call, and not as an omission or false response to a specific question concerning the extent of her prior experience with the criminal justice system. *See id.* at 131 (testimony must be viewed in broader context of question asked and answer given); *Arebalo v. State,* 143 S.W.3d 402, 408 (Tex.App.-Austin 2004, pet. ref'd).[1]

I believe the record supports the trial court's ruling. I would therefore conclude that the trial court did not abuse its discretion in refusing to allow appellant to cross-examine the complainant regarding her prior criminal history or in excluding impeachment evidence from the complainant's former husband.

---

1. The complainant's testimony did not open the door to admission of extraneous acts evidence. In *Daggett v. State,* 187 S.W.3d 444 (Tex.Crim.App., 2005), which is cited by the majority to support its conclusion that the trial court erred in excluding impeachment evidence from the complainant's former husband, the appellant directly denied any propensity to commit the acts he was charged with at least four separate times. Furthermore, two of those four statements related directly to his relationship with the victim. *Id.* at 454 n. 23. The court held the two statements appellant made relating to the charged offense ("I've never done anything of the sort with a sixteen year old girl period," and "I absolutely would not do something like this") were sufficient to open the door to rebuttal impeachment evidence. The complainant's testimony in the present case does not match this level of specificity.