Peter David **WINEGARNER**, Appellant

v.

**The STATE of Texas.**

**No. PD–0807–06.**

Court of Criminal Appeals of Texas.

Oct. 10, 2007.

---

1. 187 S.W.3d 417, 423 (Tex.Crim.App.2005) (Cochran, J., dissenting).

2. *See Wright v. State*, 201 S.W.3d 765, 770 (Tex.Crim.App.2006).

Thomas G. Pappas, Dallas, for appellant.

Shelly O'Brien Yeatts, Asst. D.A., Dallas, Matthew Paul, State's Attorney, Austin, for state.

HOLCOMB, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined.

The court of appeals held that the trial court erred in excluding certain impeachment evidence offered by appellant and that the error was not harmless. We reverse.

On June 10, 2003, the criminal district attorney of Dallas County filed an information in county criminal court charging appellant with misdemeanor assault under Texas Penal Code § 22.01(a)(1). On June 7, 2004, the State brought appellant to trial before a jury on his plea of not guilty.

At the guilt stage of the trial, the State's principal witness was the complainant, Pamela Winegarner, who testified on direct examination that: (1) she was appellant's wife; (2) in June 2003, she and appellant resided together in Dallas County; (3) on the morning of June 3, 2003, while she and appellant were at home, the two of them argued over their finances; (4) in the

course of that argument, appellant pinned her against a washing machine and shook her severely, resulting in injury to her wrist, finger, and head; (5) after appellant released her, she ran to their bedroom, picked up a telephone, and dialed 911; and (6) appellant then went to their dining room, picked up another telephone on the same line, and attempted to prevent her from talking to the 911 operator. Ms. Winegarner's testimony continued:

Q: At the time you called 911, tell us what happens at that point. What's going on in your house?

A: Well, I'm calling them. I'm telling them, basically, please send me some help. My husband has attacked me. He's beating up on me. I'm bleeding. Somebody please help me. At the same time, he is overtalking and just drowning me out, like he's done so many—just drowning me out. Basically would not allow me to talk clearly with the operator on the radio, on the phone.

Q: Did [appellant] realize that you were calling 911?

A: Yes, he did, I believe.

Q: Now, what was he saying on the phone when he was talking to 911?

A: From my understanding, all I detected that he was, basically, just trying to stop me from talking to the operator by drowning me out, loud talking me, talking about—he said stuff like I hit him first. I attacked him first, and I have to remember. *I don't know about some people, but men these days hit women. And I'm not crazy enough to hit a man or start a fight. That's why I always leave.*

Q: But he was saying at that time that you had hit him; is that correct?

A: On the [911] tape that I heard a little while ago, my recollection and everything, yes, he was trying to say that I attacked him. Yes.

When the State passed Ms. Winegarner to the defense for cross-examination, defense counsel approached the bench and asked that she be allowed to cross-examine Ms. Winegarner about her statement, "I'm not crazy enough to hit a man or start a fight." Defense counsel argued that the statement "opened the door" to impeachment by contradiction and that she ought to be allowed to cross-examine Ms. Winegarner about her plea in a previous assault case.

The trial court then excused the jury and allowed defense counsel to take Ms. Winegarner on voir dire. Ms. Winegarner testified on voir dire that, in 1990, when she was "much younger," she pled guilty to, and received deferred-adjudication probation for, assaulting her then-husband, Mohamad Knaish. When questioned about the specifics of the assault, Ms. Winegarner stated only that she defended herself against Knaish when he was abusive.

At the conclusion of Ms. Winegarner's testimony on voir dire, defense counsel renewed her request to cross-examine Ms. Winegarner before the jury about her assault on Knaish. Defense counsel argued that Ms. Winegarner's testimony on direct examination "left the impression that she would ... never hit a man, and the allegations [in 1990] were that she was violent toward her husband at that time." The trial court, after discussion, denied defense counsel's request, explaining that, since Ms. Winegarner's assault on Knaish occurred approximately fourteen years earlier, "the prejudicial values [of such cross-examination] outweigh the probative value."

Later in the course of the guilt stage, defense counsel offered the testimony of Knaish himself concerning Ms. Winegarner's assault on him. Knaish testified on voir dire that he vaguely recalled an inci-

dent many years before with Ms. Winegarner, who was his wife at the time, in which she "probably did put her hand on [his] face or something." Knaish also testified that he and Ms. Winegarner "were young" at the time of the incident. At the conclusion of Knaish's testimony, the trial court ruled it, too, inadmissible.

The jury subsequently found appellant guilty, assessed his punishment at confinement for six months, and recommended that he be placed on probation. The trial court, acting in accordance with the jury's recommendation, suspended imposition of appellant's sentence and placed him on probation for two years.

On direct appeal, appellant argued that the trial court abused its discretion in not granting defense counsel's requests to (1) cross-examine Ms. Winegarner about her assault on Knaish and (2) have Knaish himself testify about that assault. More specifically, appellant argued, as he had in the trial court, that "there is no question [that Ms. Winegarner] created a false impression in front of the jury. Her testimony [that she was 'not crazy enough to hit a man or start a fight'] was in direct contradiction with the fact that she had [once] been charged and pled guilty to ... assault." Appellant also argued, for the first time, that Ms. Winegarner's statement, "That's why I always leave," was "untruthful" and "open[ed] the door to any testimony that refute[d] it." Finally, appellant argued that the trial court's "exclusion of the [impeachment] evidence" harmed him because "[t]he whole case hinged on [Ms. Winegarner's] credibility."

■ The court of appeals, by a vote of two to one, accepted all[1] of appellant's

arguments and reversed the trial court's judgment of conviction. *Winegarner v. State*, 188 S.W.3d 379 (Tex.App.-Dallas 2006). The State later filed a petition for discretionary review, which we granted. *See* Tex.R.App. Proc. 66.3(e). In its petition and accompanying brief, the State argues that, with respect to the admissibility of the impeachment evidence in question, the court of appeals erroneously "substituted its own judgment" for that of the trial court.

■ An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g); *Calloway v. State*, 743 S.W.2d 645, 651–652 (Tex.Crim.App.1988). This is so because "trial courts ... are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ We have recognized before that when a witness, on direct examination, makes a blanket assertion of fact and thereby leaves a false impression with respect to his prior behavior or the extent of his prior troubles with the law, "he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may [impeach him by] expos[ing] the falsehood." *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.1993). We have also recognized that when a witness's blanket asser-

---

**1.** Since appellant did not argue at trial that Ms. Winegarner's statement, "That's why I always leave," opened the door to impeachment evidence, that argument was not preserved for appellate review and the court of appeals erred in considering it. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex.Crim.App. 2000); *Rezac v. State*, 782 S.W.2d 869, 871 (Tex.Crim.App.1990); Tex.R.App. Proc. 33.1(a).

tion of exemplary conduct "is directly relevant to the offense charged," the opponent "may both cross-examine the [witness] and offer extrinsic evidence rebutting the statement." *Daggett v. State*, 187 S.W.3d 444, 453 n. 24 (Tex.Crim.App.2005). On the other hand, Texas Rule of Evidence 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Thus, a trial court may exclude any relevant evidence if its probative value is substantially outweighed by any or all of the countervailing factors specified in Rule 403. *Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex.Crim.App.2006). The rule gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact upon the jury, and to conduct the necessary balancing.

■ Given the evidence before the trial court concerning the nature [2] and considerable remoteness of Ms. Winegarner's assault on Knaish, the trial court could have reasonably concluded that the probative value, if any, of the impeachment evidence offered by appellant was substantially outweighed by the danger of unfair prejudice or confusion of the issues or by considerations of undue delay. Indeed, the trial court stated on the record that the prejudicial value of that long-ago incident outweighed its probative value. As an appellate court now reviewing a cold record, we cannot say that the trial court's decision was clearly outside the zone of reasonable disagreement. Had we been in the trial

court's shoes, we might have reached a different conclusion, but that is not the standard on appellate review.

■ Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule. The rule thus allows different trial judges to reach different conclusions in different trials on substantially similar facts without abuse of discretion.

As far as we can discern from the cold record, the trial court's ruling excluding the impeachment evidence offered by appellant was within the trial court's sound discretion. Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

KELLER, P.J., filed a dissenting opinion, in which KEASLER and HERVEY, JJ., joined.

MEYERS, J., not participating.

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

The complaining witness in this case left the jury with a false impression about a matter that went to the heart of the defense. I would hold, as did the court of appeals, that the trial court abused its discretion in excluding appellant's impeachment evidence.

Appellant was charged with misdemeanor assault and entered a plea of not guilty.

---

**2.** As we noted previously, Ms. Winegarner, when questioned on voir dire about her assault on Knaish, stated only that she defended herself against him when he was abusive.

Knaish himself testified on voir dire that, during the assault, Ms. Winegarner "probably did put her hand on [his] face or something."

During the guilt phase of the trial, his wife, Pamela Winegarner, was called as the State's primary witness. The single evidentiary issue in this case arises from her testimony.

On direct examination, Ms. Winegarner testified that she and appellant were having an argument at their home. She stated that appellant assaulted her by pinning her against a washing machine and shaking her, which resulted in injuries to her head, wrist, and hand. She testified that when she was released she went to the bedroom and called 911. She said that appellant used another phone in the house to speak to the operator and gave a different version of events, claiming that his wife was the aggressor and that he was acting in self-defense. While being questioned regarding the 911 call, Ms. Winegarner volunteered:

> I don't know about some people, but men these days hit women. And I'm not crazy enough to hit a man or start a fight. That's why I always leave.

As the court of appeals explained, defense counsel sought to impeach Ms. Winegarner by cross-examining her about her plea in an assault case in which her former husband was the victim.[1] The trial judge initially ruled that the questioning would be allowed, but the State persuaded him that the plea and resulting deferred adjudication were too remote, and too prejudicial, since they occurred thirteen or fourteen years previously. When the trial court disallowed this evidence, counsel offered to have the former husband testify about the altercation that was the basis of the criminal charge against Ms. Winegarner. The trial court excluded this testimony as well, relying upon rules prohibiting the use, for impeachment purposes, of extrinsic evidence of specific instances of conduct.

The trial judge should have followed his first inclination. The evidence of Ms. Winegarner's assault upon her former husband and her plea to the charge was not offered to show that, as a person with a certain criminal record, her moral character was flawed, or that she was an untrustworthy witness in general.[2] It was offered as evidence that she had lied on the stand about a specific matter that went to the heart of this case.

There is a commonly accepted impeachment rule when a witness testifies and leaves a false impression with the jury regarding past arrests, convictions, charges, or "trouble" with the police.[3] When the witness creates such a false impression, she "opens the door" to an inquiry into the veracity of her testimony.[4] Testimony that might normally be inadmissible becomes admissible to correct the false impression the witness left with the jury.[5]

In the days before we adopted the Rules of Evidence, the "open the door" exception to the general rule of inadmissibility of extraneous offenses or bad acts was not broadly construed. Rather, it was generally limited to those instances in which a witness made assertions about his past that were either patently untrue, or clearly misleading.[6] Since the adoption of the

1. *Winegarner v. State,* 188 S.W.3d 379, 380 (Tex.App.-Dallas 2006).

2. *See* TEX.R. EVID. 404 and 609.

3. *Prescott v. State,* 744 S.W.2d 128, 131 (Tex. Crim.App.1988).

4. *See id.*

5. *Id.*

6. *See Orozco v. State,* 164 Tex.Crim. 630, 301 S.W.2d 634 (1957).

rules, Rule of Criminal Evidence 107, the "Rule of Optional Completeness," has been recognized as encompassing the "opening the door" situation.[7]

There are, however, two limitations to the scope of the completeness opening. One, only parts or items germane to the part or item offered ("on the same subject") become admissible. Two, the matter offered on the justification of completeness may be excluded under Rule 403 if its prejudicial effect substantially outweighs its probative value.[8]

The court of appeals based its decision in part on our opinion in *Daggett v. State*.[9] In that sexual assault case, the defendant testified, "I would not do something like that," and "I have never done anything of that sort with a sixteen year old girl, period."[10] In holding that the defendant had "opened the door" to testimony from another girl whom he had molested, we said in a footnote:

Where, as here, the defendant's statement of good conduct is directly relevant to the offense charged—i.e., "I would never have sexual relations with a minor"—the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement.[11]

In this case, Ms. Winegarner stated unequivocally that she would not hit a man or start a fight, and that she "always" left. The evidence appellant sought to admit was "on the same subject" and directly contradicted these statements. If this evidence doesn't open the door to contradictory evidence, I can't imagine what kind of evidence would do so.

Furthermore, the evidence was not properly excludable under Rule 403.[12] The evidence responded to testimony that was central to appellant's claim of self-defense. Though this responsive evidence was prejudicial, it was not unfairly so because it was limited to narrowly rebutting the false impression created by the witness. And though Ms. Weingarner's testimony was given in the context of questions about the 911 call, it was not responsive to those questions. Moreover, while the prior episode happened many years before this trial, evidence of it nevertheless directly rebutted the complainant's statement because of its global nature ("I always leave").[13]

As the court of appeals noted, this case was about credibility.[14] Appellant's defensive theory was that Ms. Winegarner was the aggressor; her claim was that he was the aggressor. Given that the matter at

---

7. *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim.App.1999).

8. *Id.* (citing Steven Goode, Olin Guy Wellborn II, and M. Michael Sharlot, 1 TEXAS PRACTICE GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 107.1 at 41 (West 1993)(footnotes omitted)).

9. 187 S.W.3d 444 (Tex.Crim.App.2005).

10. *Id.* at 453 n. 24

11. *Id.*

12. TEX.R. EVID. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

13. I disagree with the Court's conclusion that appellant failed to preserve error with respect to the "I always leave" portion of the complainant's testimony. This statement immediately followed, "I'm not crazy enough to hit a man or start a fight." *See* TEX.R.APP. P. 33.1(a)(1)(A)(objection must state grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

14. *Winegarner v. State*, 188 S.W.3d at 382.

issue in this case was self-defense, and given the close match between the volunteered statements and the evidence offered to rebut them, I agree with the court of appeals, and would hold that the trial court erred in excluding the proffered evidence.[15]

I respectfully dissent.

---

**15.** It should be noted that when evidence is admitted to rebut a false impression, the opposing party is entitled, upon request, to a limiting instruction directing the jury to consider the evidence only in assessing the witness's credibility. *See Daggett*, 187 S.W.3d at 454.