IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-0807-06






PETER DAVID WINEGARNER, Appellant



v.



THE STATE OF TEXAS





ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW


IN CAUSE NO. 05-04-00849-CR FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, and Cochran, JJ., joined. Keller, P.J., filed a
dissenting opinion, in which Keasler and Hervey, JJ., joined. 
Meyers, J., not participating. 

 The court of appeals held that the trial court erred in excluding certain impeachment evidence
offered by appellant and that the error was not harmless. We reverse.

 On June 10, 2003, the criminal district attorney of Dallas County filed an information in county
criminal court charging appellant with misdemeanor assault under Texas Penal Code § 22.01(a)(1). On
June 7, 2004, the State brought appellant to trial before a jury on his plea of not guilty. 

 At the guilt stage of the trial, the State's principal witness was the complainant, Pamela Winegarner,
who testified on direct examination that: (1) she was appellant's wife; (2) in June 2003, she and appellant
resided together in Dallas County; (3) on the morning of June 3, 2003, while she and appellant were at
home, the two of them argued over their finances; (4) in the course of that argument, appellant pinned her
against a washing machine and shook her severely, resulting in injury to her wrist, finger, and head; (5) after
appellant released her, she ran to their bedroom, picked up a telephone, and dialed 911; and (6) appellant
then went to their dining room, picked up another telephone on the same line, and attempted to prevent her
from talking to the 911 operator. Ms. Winegarner's testimony continued:

 Q: At the time you called 911, tell us what happens at that point. What's going on in your
house?

 

 A: Well, I'm calling them. I'm telling them, basically, please send me some help. My
husband has attacked me. He's beating up on me. I'm bleeding. Somebody please help
me. At the same time, he is overtalking and just drowning me out, like he's done so many
- just drowning me out. Basically would not allow me to talk clearly with the operator on
the radio, on the phone.

 

 Q: Did [appellant] realize that you were calling 911?

 

 A: Yes, he did, I believe.

 

 Q: Now, what was he saying on the phone when he was talking to 911?

 

 A: From my understanding, all I detected that he was, basically, just trying to stop me from
talking to the operator by drowning me out, loud talking me, talking about - he said stuff
like I hit him first. I attacked him first, and I have to remember. I don't know about
some people, but men these days hit women. And I'm not crazy enough to hit a man
or start a fight. That's why I always leave.

 

 Q: But he was saying at that time that you had hit him; is that correct?

 

 A: On the [911] tape that I heard a little while ago, my recollection and everything, yes,
he was trying to say that I attacked him. Yes.

 

 When the State passed Ms. Winegarner to the defense for cross-examination, defense counsel
approached the bench and asked that she be allowed to cross-examine Ms. Winegarner about her
statement, "I'm not crazy enough to hit a man or start a fight." Defense counsel argued that the statement
"opened the door" to impeachment by contradiction and that she ought to be allowed to cross-examine Ms.
Winegarner about her plea in a previous assault case. 

 The trial court then excused the jury and allowed defense counsel to take Ms. Winegarner on voir
dire. Ms. Winegarner testified on voir dire that, in 1990, when she was "much younger," she pled guilty
to, and received deferred-adjudication probation for, assaulting her then-husband, Mohamad Knaish. 
When questioned about the specifics of the assault, Ms. Winegarner stated only that she defended herself
against Knaish when he was abusive.

 At the conclusion of Ms. Winegarner's testimony on voir dire, defense counsel renewed her
request to cross-examine Ms. Winegarner before the jury about her assault on Knaish. Defense counsel
argued that Ms. Winegarner's testimony on direct examination "left the impression that she would . . . never
hit a man, and the allegations [in 1990] were that she was violent toward her husband at that time." The
trial court, after discussion, denied defense counsel's request, explaining that, since Ms. Winegarner's
assault on Knaish occurred approximately fourteen years earlier, "the prejudicial values [of such cross-examination] outweigh the probative value."

 Later in the course of the guilt stage, defense counsel offered the testimony of Knaish himself
concerning Ms. Winegarner's assault on him. Knaish testified on voir dire that he vaguely recalled an
incident many years before with Ms. Winegarner, who was his wife at the time, in which she "probably did
put her hand on [his] face or something." Knaish also testified that he and Ms. Winegarner "were young"
at the time of the incident. At the conclusion of Knaish's testimony, the trial court ruled it, too, inadmissible.

 The jury subsequently found appellant guilty, assessed his punishment at confinement for six months,
and recommended that he be placed on probation. The trial court, acting in accordance with the jury's
recommendation, suspended imposition of appellant's sentence and placed him on probation for two years.

 On direct appeal, appellant argued that the trial court abused its discretion in not granting defense
counsel's requests to (1) cross-examine Ms. Winegarner about her assault on Knaish and (2) have Knaish
himself testify about that assault. More specifically, appellant argued, as he had in the trial court, that "there
is no question [that Ms. Winegarner] created a false impression in front of the jury. Her testimony [that she
was 'not crazy enough to hit a man or start a fight'] was in direct contradiction with the fact that she had
[once] been charged and pled guilty to . . . assault." Appellant also argued, for the first time, that Ms.
Winegarner's statement, "That's why I always leave," was "untruthful" and "open[ed] the door to any
testimony that refute[d] it." Finally, appellant argued that the trial court's "exclusion of the [impeachment]
evidence" harmed him because "[t]he whole case hinged on [Ms. Winegarner's] credibility."

 The court of appeals, by a vote of two to one, accepted all (1) of appellant's arguments and reversed
the trial court's judgment of conviction. Winegarner v. State, 188 S.W.3d 379 (Tex.App.-Dallas 2006). 
The State later filed a petition for discretionary review, which we granted. See Tex. R. App. Proc. 66.3(e). 
In its petition and accompanying brief, the State argues that, with

respect to the admissibility of the impeachment evidence in question, the court of appeals erroneously
"substituted its own judgment" for that of the trial court. 

 An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. 
In other words, as long as the trial court's decision was within the zone of reasonable disagreement and
was correct under any theory of law applicable to the case, it must be upheld. Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g); Calloway v. State, 743 S.W.2d 645, 651-652
(Tex.Crim.App. 1988). This is so because "trial courts . . . are usually in the best position to make the call
on whether certain evidence should be admitted or excluded." Guzman v. State, 955 S.W.2d 85, 89
(Tex.Crim.App. 1997).

 We have recognized before that when a witness, on direct examination, makes a blanket assertion
of fact and thereby leaves a false impression with respect to his prior behavior or the extent of his prior
troubles with the law, "he 'opens the door' on his otherwise irrelevant past criminal history and opposing
counsel may [impeach him by] expos[ing] the falsehood." Delk v. State, 855 S.W.2d 700, 704
(Tex.Crim.App. 1993). We have also recognized that when a witness's blanket assertion of exemplary
conduct "is directly relevant to the offense charged," the opponent "may both cross-examine the [witness]
and offer extrinsic evidence rebutting the statement." Daggett v. State, 187 S.W.3d 444, 453 n. 24
(Tex.Crim.App. 2005). On the other hand, Texas Rule of Evidence 403 provides that, "[a]though relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Thus, a trial court may exclude any relevant evidence if its probative
value is substantially outweighed by any or all of the countervailing factors specified in Rule 403. 
Gigliobianco v. State, 210 S.W.3d 637, 640 (Tex.Crim.App. 2006). The rule gives the trial court
considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness'
testimony and its impact upon the jury, and to conduct the necessary balancing. 

 Given the evidence before the trial court concerning the nature (2) and considerable remoteness of
Ms. Winegarner's assault on Knaish, the trial court could have reasonably concluded that the probative
value, if any, of the impeachment evidence offered by appellant was substantially outweighed by the danger
of unfair prejudice or confusion of the issues or by considerations of undue delay. Indeed, the trial court
stated on the record that the prejudicial value of that long-ago incident outweighed its probative value. As
an appellate court now reviewing a cold record, we cannot say that the trial court's decision was clearly
outside the zone of reasonable disagreement. Had we been in the trial court's shoes, we might have
reached a different conclusion, but that is not the standard on appellate review.

 Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant
evidence, Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that
individual judge, in the context of that particular trial, to be insufficiently probative when measured against
the countervailing factors specified in the rule. The rule thus allows different trial judges to reach different
conclusions in different trials on substantially similar facts without abuse of discretion.

 As far as we can discern from the cold record, the trial court's ruling excluding the impeachment
evidence offered by appellant was within the trial court's sound discretion. Accordingly, we reverse the
judgment of the court of appeals and affirm the judgment of the trial court.


DELIVERED OCTOBER 10, 2007

PUBLISH
1. Since appellant did not argue at trial that Ms. Winegarner's statement, "That's why I always
leave," opened the door to impeachment evidence, that argument was not preserved for appellate
review and the court of appeals erred in considering it. Martinez v. State, 22 S.W.3d 504, 507
(Tex.Crim.App. 2000); Rezac v. State, 782 S.W.2d 869, 871 (Tex.Crim.App. 1990); Tex. R. App.
Proc. 33.1(a).
2. As we noted previously, Ms. Winegarner, when questioned on voir dire about her assault on
Knaish, stated only that she defended herself against him when he was abusive. Knaish himself testified
on voir dire that, during the assault, Ms. Winegarner "probably did put her hand on [his] face or
something."