IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-807-06




 


PETER DAVID WINEGARNER, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 

 Keller, P.J., filed a dissenting opinion in which Keasler and Hervey, jj.,
joined.



 The complaining witness in this case left the jury with a false impression about a matter that went
to the heart of the defense. I would hold, as did the court of appeals, that the trial court abused its
discretion in excluding appellant's impeachment evidence. 

 Appellant was charged with misdemeanor assault and entered a plea of not guilty. During the guilt
phase of the trial, his wife, Pamela Winegarner, was called as the State's primary witness. The single
evidentiary issue in this case arises from her testimony. 

 On direct examination, Ms. Winegarner testified that she and appellant were having an argument
at their home. She stated that appellant assaulted her by pinning her against a washing machine and shaking
her, which resulted in injuries to her head, wrist, and hand. She testified that when she was released she
went to the bedroom and called 911. She said that appellant used another phone in the house to speak
to the operator and gave a different version of events, claiming that his wife was the aggressor and that he
was acting in self-defense. While being questioned regarding the 911 call, Ms. Winegarner volunteered:

 I don't know about some people, but men these days hit women. And I'm not crazy
enough to hit a man or start a fight. That's why I always leave.


As the court of appeals explained, defense counsel sought to impeach Ms.Winegarner by cross-examining
her about her plea in an assault case in which her former husband was the victim. (1) The trial judge initially
ruled that the questioning would be allowed, but the State persuaded him that the plea and resulting
deferred adjudication were too remote, and too prejudicial, since they occurred thirteen or fourteen years
previously. When the trial court disallowed this evidence, counsel offered to have the former husband testify
about the altercation that was the basis of the criminal charge against Ms. Winegarner. The trial court
excluded this testimony as well, relying upon rules prohibiting the use, for impeachment purposes, of
extrinsic evidence of specific instances of conduct.

 The trial judge should have followed his first inclination. The evidence of Ms. Winegarner's assault
upon her former husband and her plea to the charge was not offered to show that, as a person with a
certain criminal record, her moral character was flawed, or that she was an untrustworthy witness in
general. (2) It was offered as evidence that she had lied on the stand about a specific matter that went to the
heart of this case.

 There is a commonly accepted impeachment rule when a witness testifies and leaves a false
impression with the jury regarding past arrests, convictions, charges, or "trouble" with the police. (3) When
the witness creates such a false impression, she "opens the door" to an inquiry into the veracity of her
testimony. (4) Testimony that might normally be inadmissible becomes admissible to correct the false
impression the witness left with the jury. (5) 

 In the days before we adopted the Rules of Evidence, the "open the door" exception to the general
rule of inadmissibility of extraneous offenses or bad acts was not broadly construed. Rather, it was
generally limited to those instances in which a witness made assertions about his past that were either
patently untrue, or clearly misleading. (6) Since the adoption of the rules, Rule of Criminal Evidence 107, the
"Rule of Optional Completeness," has been recognized as encompassing the "opening the door" situation. (7) 

 There are, however, two limitations to the scope of the completeness opening. One, only
parts or items germane to the part or item offered ("on the same subject") become
admissible. Two, the matter offered on the justification of completeness may be excluded
under Rule 403 if its prejudicial effect substantially outweighs its probative value. (8)

 

 The court of appeals based its decision in part on our opinion in Daggett v. State. (9) In that sexual
assault case, the defendant testified, "I would not do something like that," and "I have never done anything
of that sort with a sixteen year old girl, period." (10) In holding that the defendant had "opened the door" to
testimony from another girl whom he had molested, we said in a footnote:

 Where, as here, the defendant's statement of good conduct is directly relevant to the
offense charged - i.e., "I would never have sexual relations with a minor" - the opponent
may both cross-examine the defendant and offer extrinsic evidence rebutting the
statement. (11)

 

 In this case, Ms. Winegarner stated unequivocally that she would not hit a man or start a fight, and
that she "always" left. The evidence appellant sought to admit was "on the same subject" and directly
contradicted these statements. If this evidence doesn't open the door to contradictory evidence, I can't
imagine what kind of evidence would do so. 

 Furthermore, the evidence was not properly excludable under Rule 403. (12) The evidence
responded to testimony that was central to appellant's claim of self-defense. Though this responsive
evidence was prejudicial, it was not unfairly so because it was limited to narrowly rebutting the false
impression created by the witness. And though Ms. Weingarner's testimony was given in the context of
questions about the 911 call, it was not responsive to those questions. Moreover, while the prior episode
happened many years before this trial, evidence of it nevertheless directly rebutted the complainant's
statement because of its global nature ("I always leave"). (13) 

 As the court of appeals noted, this case was about credibility. (14) Appellant's defensive theory was
that Ms. Winegarner was the aggressor; her claim was that he was the aggressor. Given that the matter
at issue in this case was self-defense, and given the close match between the volunteered statements and
the evidence offered to rebut them, I agree with the court of appeals, and would hold that the trial court
erred in excluding the proffered evidence. (15) 

 I respectfully dissent.

DATE: October 10, 2007

PUBLISH

 
1. Winegarner v. State, 188 S.W.3d 379, 380 (Tex. App.-Dallas 2006).
2. See Tex. R. Evid. 404 and 609.
3. Prescott v. State, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988). 
4. See id. 
5. Id.
6. See Orozco v. State, 301 S.W.2d 634 (Tex. Crim. App. 1957).
7. Fuentes v. State, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999).
8. Id. (citing Steven Goode, Olin Guy Wellborn II, and M. Michael Sharlot, 1 Texas
Practice Guide to the Texas Rules of Evidence: Civil and Criminal § 107.1 at 41 (West
1993)(footnotes omitted)). 
9. 187 S.W.3d 444 (Tex. Crim. App. 2005).
10. Id. at 453 n.24
11. Id.
12. Tex. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."
13. I disagree with the Court's conclusion that appellant failed to preserve error with respect to
the "I always leave" portion of the complainant's testimony. This statement immediately followed, "I'm
not crazy enough to hit a man or start a fight." See Tex. R. App. P. 33.1(a)(1)(A)(objection must state
grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context").
14. Winegarner v. State, 188 S.W.3d at 382.
15. It should be noted that when evidence is admitted to rebut a false impression, the opposing
party is entitled, upon request, to a limiting instruction directing the jury to consider the evidence only in
assessing the witness's credibility. See Daggett,187 S.W.3d at 454.