# NO. 12-15-00137-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL VINCENT MOORE,* *APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Michael Vincent Moore, appeals his conviction for capital murder for which he was sentenced to imprisonment for life without parole. In two issues, Appellant contends the evidence is insufficient to support the jury's verdict. In a third issue, Appellant maintains that "[t]he aggregate effect of erroneous rulings by the trial court in allowing the jury to hear objectionable and inadmissible evidence irreparably harmed [him] and [he] should be granted a new trial." We affirm.

### BACKGROUND

Alicia Moore, the sixteen year old victim, was seen on film from the school bus video camera alighting from the bus at her home at 1900 Gibbons Street in Greenville, Texas, at 3:30 p.m., November 2, 2012. She never made it to the house. Her alcoholic unemployed great-uncle, Mike Wofford, was the only person at the house at that time of day. He testified that he never saw her. When Alicia did not return by 8:00 p.m., her family started searching for her, reported her missing to the police, and posted flyers around town asking for help in locating her.

On November 5, 2012, Texas Department of Transportation workers found a black wicker trunk containing Alicia's nude body three and one-half miles north of Wills Point in Van Zandt County. When her body was removed from the trunk, investigators found the words

"nigger whore" written in spray paint on the bottom of the trunk. A backward facing swastika was painted inside the trunk lid. Alicia's body showed multiple ligature marks around the neck and throat and abrasions on her face and head.

The justice of the peace who pronounced her dead ordered an autopsy. The medical examiner performed the autopsy at 7:30 p.m., November 7, 2012. The medical examiner determined that Alicia had been sexually assaulted and that her death resulted from strangulation. Samples of semen were recovered from Alicia's vagina and anus. Scleral hemorrhages in Alicia's eyes indicated that she was alive when she sustained her injuries. Alicia's anus was abnormally dilated and showed small abrasions consistent with sexual assault. Vaginal lesions and tears evidenced trauma. Redness surrounding the injuries indicated a high likelihood that Alicia was alive when she sustained the trauma to her vagina and anus. Her injuries were also fresh—evidence that the trauma to her genitals happened shortly before her death.

On the day Alicia disappeared, she was living at 1900 Gibbons Street with five adult family members: her mother, Aretha Moore; her grandmother, Deborah Moore; her aunt (and mother's sister) Jessica Byrd; Jessica's husband, Kenneth Byrd; and the great-uncle, Michael Wofford.

Appellant is grandmother Deborah Moore's brother, and therefore Alicia's great-uncle. He had returned from California to Grand Prairie, Texas, to help take care of his ailing father. He came down to visit his Greenville relatives every other weekend. Appellant appeared to have a warm relationship with Alicia. He was teaching her to bake, he took her to the store, and he also bought her presents. On at least one occasion, he took Alicia to Grand Prairie for a visit with Sheila, another relative. None of the family observed anything inappropriate in their relationship.

DNA samples were collected from Kenneth Byrd and Michael Wofford, the two male members of the household, and from Appellant. DNA samples were also obtained from Tobias Whetstone, Alicia's boyfriend. Others tested included Joseph Warmke, Jacob Allen, and Robert Bell. Appellant is an African-American. All contributors tested were eliminated as possible contributors to the sample from Alicia's body except Appellant.

Texas Ranger Michael Adcock was present when Alicia's body was taken from the wicker trunk. He led the investigation until its conclusion. When he was notified of the DNA testing results, he did not immediately arrest Appellant. He obtained and executed search

warrants for Appellant's house and car. An analysis of the various items seized yielded nothing connecting Appellant to Alicia's murder. Ranger Adcock also obtained Appellant's cell phone records. These showed possibly significant gaps in usage on the day of Alicia's disappearance and on the day her body was discovered. No fingerprints could be obtained from the wicker trunk where Alicia's body was found.

Jessica Byrd, Alicia's aunt, received several letters from Appellant while he was in jail awaiting trial. In one of those letters, Appellant stated that he believed the DNA evidence was planted by the police, and that the police had filed "false documents" in his case.

The trial court admitted into evidence, over Appellant's objections on Rule 403 grounds, a recorded statement he gave to CBS radio reporter L.P. Phillips. In the statement, Appellant mistakenly mentioned that investigators had found some of Alicia's hair in his car. When the trial court admitted this into evidence, the jury had already heard Ranger Adcock testify that his investigation discovered no evidence connecting the victim to Appellant's vehicle.

Shenae Stephenson testified for the defense. Shortly after Alicia's disappearance, Shenae saw a news report regarding Alicia's family's efforts to find her. She remembered that on the afternoon of November 2, 2012, she was driving behind a school bus when it stopped and let a girl get off. She observed that as the girl got off the bus, a newer model black truck made a quick turn and began to slowly follow the girl. Shenae thought this was suspicious so she "drove around and made another quick turn, but I didn't see her." She got a good look at the truck driver and the girl. The truck driver was an Hispanic man with black hair parted on the side. She was certain that the girl she saw get off the bus was the same girl whose picture she had seen on the TV news. However, she did not see the girl in the truck. She reported what she had seen to the police on November 7, 2012. According to her testimony, the police did not get in touch with her thereafter.

The case's notoriety complicated its investigation. There was a two and one-half month interval between the murder and the receipt of the DNA analysis. During that time, the investigators received numerous leads and a plainly bogus confession. Considerable investigative effort was expended in following these leads, but none produced useful information.

3

In his first issue, Appellant contends that the evidence is insufficient to support his conviction. In his second issue, Appellant maintains that the evidence against him is circumstantial, and the evidence presented supports an inference other than his guilt. Therefore, he contends the jury's finding of guilt was not a rational finding.

**Standard of Review and Applicable Law**

Appellate review of the sufficiency of the evidence requires that all of the evidence should be viewed in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). A review of all the evidence includes evidence that was properly and improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Since *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), appellate review of evidentiary sufficiency in circumstantial evidence cases no longer requires that the evidence exclude every reasonable hypothesis other than the defendant's guilt. *Id*. at 161.

A person commits a capital felony if he (1) intentionally or knowingly causes the death of an individual (2) in the course of committing or attempting to commit aggravated sexual assault. TEX. PENAL CODE ANN. §§ 19.02(b)(1) (West 2011), 19.03(a)(2), (b) (West Supp. 2015).

**Discussion**

Appellant argues that the State's theory of the case is that he picked Alicia up, held her in his custody, violently sexually assaulted her, murdered her, and dumped her body just north of Wills Point in Van Zandt County. He points out that no eyewitness claimed to see Alicia with Appellant during her disappearance; that there was evidence that he never left his home in Grand Prairie on the day she disappeared because his truck would not run; and that no evidence, including telephone records, surveillance footage, or receipts, placed him in Van Zandt County.

There was nothing found on the computers taken from Appellant's home that showed he communicated with Alicia. Investigators found nothing in their search of Appellant's home and

car that connected Appellant to the murder. None of Alicia's personal items, such as her iPad, orange backpack, makeup, or combs, were ever found.

Appellant emphasizes that the evidence demonstrates he had a cordial relationship with Alicia. His conduct when he was with her and during her disappearance never excited suspicion. All the family regarded Appellant as gay—an orientation, he insists, that is inconsistent with the crime.

Appellant points to the jury's failure to consider more obvious suspects. Alicia's alcoholic great-uncle, Mike Wofford, was the only person at home when she got off the school bus. Several people in Greenville gave information to the Greenville police that Omes and Adrian Gray were involved in Alicia's abduction and death.

Dee Williams contacted WFAA news in Dallas on Facebook and said he had been paid $5,000 by Alicia's mother to kill Alicia. When Williams failed to show up for a meeting with investigators, they dismissed the confession as unreliable and did not pursue an investigation of Williams.

When Alicia disappeared, Terry Rasmire was in the Hunt County jail awaiting trial for sexually assaulting her the summer before when she was fifteen. Appellant claims no one had a more obvious motive to have Alicia killed than Rasmire. Appellant hypothesizes other more improbable explanations of her disappearance and murder.

Appellant's semen was found inside Alicia's body. Forensic scientist, Amber Moss, told the jury that the chances of another African-American matching the DNA profile of Appellant were "one in 93.46 million." The injuries to her anus and vagina indicated that she was the victim of a violent sexual assault. Redness surrounding the wounds demonstrated she was probably alive during the attack. It was the medical examiner's opinion that because the injuries to her anus and genitals were still fresh, it was reasonable to infer that the sexual assault occurred shortly before her death. It is also a reasonable inference that her assailant then strangled Alicia to conceal his identity.

The evidence shows that Appellant had what appeared to be a cordial relationship with Alicia. He was her grandmother's brother. He visited her home every other weekend, and took her shopping. It is reasonable to infer that he was familiar with her schedule. He was a person Alicia would have trusted.

5

Viewed in the light most favorable to the verdict, the evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Appellant intentionally or knowingly caused Alicia Moore's death while committing aggravated sexual assault.

Appellant's first two issues are overruled.


## EVIDENTIARY CHALLENGES

In Appellant's third issue, he complains that he was irreparably harmed by the "aggregate effect of erroneous rulings by the trial court in allowing the jury to hear . . . inadmissible evidence." In this issue, Appellant argues the trial court reversibly erred (1) in admitting his cell phone records, (2) in allowing the admission of a recorded statement he gave to CBS radio reporter L.P. Phillips, and (3) in admitting a WFAA Channel 8 news report in which he appeared. We review the trial court's rulings admitting or excluding evidence for abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

### Cell Phone Records

Appellant objected to the admission of his cell phone records because (1) they contain inadmissible hearsay and (2) the information they contain is not relevant to any issue in the case." When the trial court overruled his objection to their admission, Appellant moved for a mistrial, which was also overruled.

The trial court admitted Appellant's cell phone records under the business records exception to the hearsay rule. Texas Rule of Evidence 803(6) creates an exception to the hearsay rule for a record of an "act, event, condition, opinion, or diagnosis" if the record was made by a person with knowledge of the events or from information transmitted by a person with such knowledge. Business records admissible under this rule can be admitted for the truth of the matters asserted in those records. *See **Tex. Alcoholic Beverage Comm'n v. Sanchez***, 96 S.W.3d 483, 489 (Tex. App.—Austin 2002, no pet.). Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. TEX. R. EVID. 805.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402.

6

Appellant does not contend that cell phone records are not business records contemplated by the rule. Nor does he challenge the predicate for their admission. The information in the cell phone records, although hearsay, is admissible for the truth of the matters asserted therein except for objectionable hearsay within hearsay. Appellant points to no specific information in the records that he claims is hearsay within hearsay.

Appellant's cell phone activity volume and the locations from where the calls were made were relevant to the accused's whereabouts and activity during the days surrounding Alicia's disappearance and death. The trial court did not err in overruling Appellant's objection to their admission nor in overruling his motion for mistrial.

## Radio Statement

Appellant maintains the trial court erred in admitting a recorded statement that he gave to CBS radio reporter L.P. Phillips in which he stated that the police had found hair evidence in his truck. When Appellant's statement was admitted, Texas Ranger Adcock had already testified that they had been unable to find anything incriminating in Appellant's truck.

Appellant objected under Texas Rule of Evidence 403 that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and of misleading the jury. Appellant argues that because his statement was incorrect, it had no probative value. He also claims that the statement might lead the jurors to speculate that other evidence had been found but was withheld from them.

It is reasonable to infer from Appellant's misstatement that he believed the police had found Alicia's hair in his truck, because he knew she had been there. The evidence was prejudicial to Appellant's defense but not unfairly prejudicial. The trial court did not err in overruling Appellant's Rule 403 objection.

## Television News Story

Appellant also claims the trial court reversibly erred in admitting State's exhibit 28, a WFAA Channel 8 news report in which Appellant appeared. The State introduced the recording through Ranger Adcock. Appellant objected that the Ranger did not create the recording and could not be a sponsoring witness for it, and the Ranger had no way of knowing if this was a full and accurate copy of the original recording made by the news station. If admitted, Appellant argued, he should be entitled to the full recording. He objected that under Texas Rule of Evidence 901, the State could not satisfy the requisite predicate for its admission through Ranger

Adcock. Appellant also objected to the exhibit's admission under Rule 403. Ranger Adcock admitted that he could not testify that the exhibit was an accurate recording of the original footage made by WFAA. Appellant argues that harm from the admission of the exhibit is demonstrated by the prosecutor's closing argument based upon it.

> [Appellant's] statement to the news media, 'I'm over it,' he says this in February. 'I'm over it.'
> . . . . It could be consistent with guilt. It could be that he's over it because he's been grieving a lot longer than they have because he killed her.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R. EVID. 901(a). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403.

The WFAA Channel 8 news clip shows a neighborhood party remembering and celebrating Alicia's life on what would have been her seventeenth birthday. The party took place and the news segment was broadcast three months after Alicia's death and before Appellant's arrest.

Ranger Adcock saw the news segment as it was broadcast on WFAA. The same segment was on the WFAA website. Adcock testified that he recorded the story of Alicia's birthday party exactly as it was broadcast, and that the recording had not been altered or amended. The three people identified on the video are Alicia, her aunt Jessica, and Appellant.

We conclude there is sufficient evidence to support a finding that the video copy of the television news story about Alicia's birthday party is what its proponents claimed. The trial court did not abuse its discretion in overruling Appellant's Rule 901 objection.

The video shows a DJ spinning records while Alicia's friends and neighbors danced in the street. Appellant appeared baking cupcakes. The WFAA reporter described him as her uncle, a professional baker, who "had spent hours teaching Alicia to bake cupcakes." Viewed in the setting of her friends and family celebrating her life, Appellant's remarks seemed more in keeping with the mood of the gathering than out of the ordinary or a cause for suspicion.

The WFAA news story had, perhaps, some probative value in demonstrating Appellant's relationship with Alicia.  But the report's sympathetic portrayal of Appellant falls far short of being so unfairly prejudicial as to substantially outweigh the news story's even limited probative value.  The trial court did not err in overruling Appellant's Rule 403 objection to its introduction.

Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the judgment of the trial court.

**BILL BASS**
Justice

Opinion delivered April 29, 2016.
*Panel consisted of Hoyle, J., Neeley, J., Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 29, 2016

NO. 12-15-00137-CR

**MICHAEL VINCENT MOORE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 294th District Court

of Van Zandt County, Texas (Tr.Ct.No. CR13-00337)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Hoyle, J., Neeley, J. and Bass, Retired J.,*
*Twelfth Court of Appeals, sitting by assignment.*