Affirmed and Memorandum Opinion filed January 29, 2009








Affirmed and Memorandum Opinion filed January 29,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00125-CR

_______________

 

JOHNATHAN PAUL McNICHOLS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 1114809 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant
Johnathan Paul McNichols, a juvenile, was certified to stand trial as an adult
for aggravated sexual assault.  A jury found him guilty and sentenced him to 60
years= incarceration.  In two issues on
appeal, he asserts that the trial court erred by (a) denying his motion to
suppress and (b) admitting certain witness testimony during the punishment
phase of the trial.  We affirm.








I.  Background

Appellant
has not challenged the sufficiency of the evidence; we therefore discuss the
facts only briefly here and throughout the opinion as necessary to address his
appellate issues.

On
January 17, 2007, appellant took a plastic air soft gun from a WalMart store
and followed a 30-year-old Hispanic woman out of the store, to the parking lot,
and then to her minivan.  He approached the woman, threatened her with the air
soft gun wrapped in a bandana, and demanded that she give him her money.  He
then instructed her to move to the passenger seat, got into the van, and drove
out of the parking lot.  After a brief stop, he made her drive the van to a
drive-through convenience store to buy some cigarettes and then park in the
empty lot of a skating rink.  He instructed her to get in the back of the van
and remove her clothing; she complied.  Appellant forced her to perform oral
sex on him and attempted vaginal penetration.  The complaining witness was able
to fight appellant off; he grabbed his clothes and fled the scene, leaving
behind a PlayStation 2 in a black case.

The
complaining witness immediately reported the assault to police.  Initially,
officers were unable to develop any suspects.  They obtained still photos from
the WalMart surveillance videos and ran a CrimeStoppers piece in the local
media.  Several witnesses identified appellant from the photographs, including
his parents.  The investigating officer, Sergeant Thomas Keen of the Harris
County Sheriff=s Department, met with appellant=s parents and discussed appellant=s activities on the day in question. 
His parents reported that he had been dropped off and picked up at school as
usual that day. They told Keen that appellant said he lost his PlayStation 2
that day.  Appellant=s parents provided Sergeant Keen with several photographs,
but none were appropriate for a photo array.  They also informed Keen that
appellant left home the day after the offense and had not returned.








Keen
obtained a yearbook page from appellant=s seventh-grade yearbook.  After
concealing the names, he showed it to the complainant.  She identified
appellant=s photograph.  After speaking with appellant=s parents, Keen filed charges against
appellant for robbery, kidnapping, and sexual assault.  Officers picked up an
individual who identified himself as Johnathan McNichols on January 25, 2007. 
Keen requested that appellant be held in the juvenile holding facility of the
Wallisville substation, which is a certified juvenile processing center. 
Regarding parental notification, Keen testified as follows:

Q. [by the
State]:  And were his parents notified?

A. [by
Keen]:  I did notify the parents that morning.  I don=t know the exact time, whether it was around 1:00 or
before 1:00 or after 1:00, but I personally made contact with the family and
notified his family of - - that he was incarcerated.

Q.:  And
did his father ultimately come down to the Wallisville substation?

A.:  Yes,
he did.

Keen
testified that he took appellant before magistrate judge Mike Parrot, who
informed appellant of the charges and his rights.  Keen then interviewed
appellant, and appellant provided a statement in which he confessed to the
offense and articulated several specific details, such as the location of the
air gun.  After taking appellant=s statement, Keen returned appellant
to Judge Parrot.  Judge Parrot again spoke with appellant; appellant signed his
confession in Judge Parrot=s presence, as required by section 51.095 of the Texas Family
Code.  

At his
trial, appellant=s statement was admitted into evidence over his objection
based on Chapter 51 of the Texas Family Code.[1] 
Additionally, the complaining witness testified regarding the offense and
identified appellant as her assailant.  The jury found appellant guilty as
charged.  








During
the punishment hearing, several witnesses testified regarding appellant=s prior bad acts.  He had a history
of acting out in school, and recently had acted out in a sexual manner. 
Appellant also had stolen his father=s vehicle and broken into a local
convenience store.  In addition, he had started two fires, one in school and
one at a school bus stop near his home.  Luanne Martin, a counselor at
appellant=s middle school, testified regarding appellant=s school behavior and described two
occasions in which appellant recently acted out sexually in school.  During her
testimony, the following colloquy occurred:

Q.:       What is your opinion about Johnathan=s - - Johnathan=s
ability to be in the community and not be a threat to others?

[Defense counsel]:    Your Honor, I have to object.  I
don=t believe this witness is qualified or has the
background or expertise to give that side - - that sort of opinion on future
dangerousness.

[The Court]:               Overruled.  You may answer.

A.:       Well, because I=ve
seen Johnathan, if Johnathan is in a situation . . . where he is not in control
and where you=re going to make him to do something that he doesn=t want to do and this has been seen over and over and
over again in the classroom and in other situations with other children,
Johnathan is going to fight back.  He is going to do something to get out of
that situation.  And it doesn=t, I don=t think it matters what it is that he=s going to do, in an aggressive manner.  It may be
just running away, which he=s done before
for at least for a day or two; he ran away from school.  It may be going to set
a fire to get out of that situation.  It may be going to hit somebody to get
the attention off of him, I don=t know.  But
that is my greatest fear because it seems to be escalat[ing] as he=s gotten older to more aggressive techniques.

Q.:       Do you think he=s
dangerous to other people?

A.:       Yes, ma=am, I do.

Q.:       Do you think that will escalate as he becomes older?

A.:       If he doesn=t get the proper
help, I think so.

Q.:       Do you think that Johnathan is capable, if given a set of
rules and being told you need to follow these rules for a period of time, is he
capable of doing that?

A.:       He has not been in the past.








Appellant=s parents and another school
counselor testified on his behalf at the punishment hearing.  The jury also
heard evidence of potentially extenuating circumstances.  In particular,
appellant was diagnosed with ADHD[2] when he was
in elementary school and had been raped by a cousin at a young age.  The State
then presented the testimony of Dr. Nicole Dorsey, a clinical psychologist with
the Children=s Assessment Center, who testified in detail regarding the treatment
appellant could receive in prison.  She also testified regarding her deep
concern about the future of an individual who had displayed the type of
behavior appellant had displayed at such a young age.  

At the
close of the punishment phase, the jury sentenced appellant to 60 years= incarceration.  The trial court
rendered judgment on the jury=s verdict and this appeal timely ensued.

II.  Issues Presented

In his
first issue, appellant contends that, because his parents were not Apromptly notified@ as required by the Texas Family Code,
the trial court erred in denying his motion to suppress his out-of-court
statement.  Appellant asserts in his second issue that the trial court abused
its discretion in admitting testimony by Luanne Martin regarding his future
dangerousness.

III.  Analysis

A.        Motion to Suppress








The
State argues that appellant=s first issue has not been preserved for review.  We agree. 
Appellant=s written motion to suppress was based on section  51.095 of the Texas
Family Code, which specifies the manner in which a juvenile must be advised of
his rights.  This subsection provides that a statement of a child may be
admitted in evidence when certain procedures have been followed.  See Tex. Fam. Code Ann. ' 51.095 (a) (Vernon  Supp. 2008)
(providing that a statement of a child is admissible when, among other things,
(a) the statement is in writing and the child received warnings from a
magistrate before it was made; (b) the written statement was signed in the
presence of the magistrate by the child with no law enforcement personnel
present; and (c) the magistrate is Afully convinced@ that the child understands the
nature and contents of the statement and signed it voluntarily).  Additionally,
appellant=s trial counsel objected to the admission of appellant=s statement as follows:

With
respect to [appellant=s statement], I will reurge the Motion to Suppress
that has been done in writing with the Court in that it violates Mr. McNichols=[s] federal and state constitutional rights, and the
statement was not taken in conformity with Chapter 51 of the Texas Family
Code.

On
appeal, however, appellant does not dispute that the procedures described in
section 51.095 were followed, but instead challenges the admission of the
statement on the ground that the investigating officer allegedly failed to
promptly notify appellant=s parents when he was arrested, as required by Chapter 52 of
the Family Code.  See id. ' 52.02(b) (AA person taking a child into custody
shall promptly give notice of the person=s action and a statement of the
reason for taking the child into custody, to . . . the child=s parent, guardian, or custodian[.]@).  Because his complaint on appeal
does not comport with his complaint at trial, he has failed to preserve this
argument for review.  See Hill v. State, 78 S.W.3d 374, 382 (Tex. App.CTyler 2001, pet. ref=d).  








Moreover,
any error in admitting appellant=s statement was harmless because
there is ample evidence to support his conviction without his statement.  See
Reese v. State, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (A>[A] criminal conviction should not be
overturned for non‑constitutional error if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect.=@ (quoting Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).  Here, the complaining witness
immediately notified police about her attack.  She also testified in detail
regarding the offense and positively identified appellant as her assailant.  See
Tex. Code Crim. Proc. Ann. art.
38.07 (Vernon 2005) (sexual assault conviction supportable on uncorroborated
testimony of victim alone if victim informed another within one year of
offense).  The physical evidence discovered in the complaining witness=s vehicle supported her statements. 
Several witnesses, including appellant=s parents, identified appellant from
the CrimeStoppers photographs released through the media.  The State also
introduced surveillance camera footage from the WalMart location showing
appellant following the complaining witness to her vehicle.  Given the record
before us, we have fair assurance that any error in admitting appellant=s statement did not influence the
jury or had but a slight effect.  Thus, we would overrule appellant=s first issue even if it had been
preserved for review.

B.        Punishment Testimony

Turning
to appellant=s second issue, we review the trial court=s evidentiary rulings for abuse of discretion. 
Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en
banc).  We will not disturb the trial court=s ruling if it is Awithin the zone of reasonable
disagreement.@  Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App.
2007).  Instead, we will uphold the ruling if it is reasonably supported by the
record and correct on any theory of law applicable to the case.  Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  Finally, error in
allowing inadmissible evidence is cured when the same evidence is admitted
without objection.  Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App.
2003). 








As a
preliminary matter, we note that a lay witness may offer opinion testimony
regarding opinions or inferences that are rationally based on her perceptions
and helpful to a clear understanding of her testimony or the determination of a
fact in issue.  See Tex. R. Evid.
702.  Although appellant objected to Martin=s qualifications, her testimony was
based on her personal experience with appellant, having known him and worked
with him through the school district for several years.  She testified that
based on her personal knowledge of appellant and her experiences with him, she
believed his aggressive behavior could escalate as he gets older if he did not
receive the Aproper help.@  Her testimony was rationally based on her perceptions and
was helpful to the determination of the appropriateness of appellant=s punishment.  See id.  Thus,
her testimony was admissible as the opinion testimony of a lay witness, and the
trial court did not abuse its discretion in admitting it.

Further,
even if the trial court erred in admitting her testimony, this error was
harmless.  See Tex. R. App. P. 44.2(b)
(AAny [non-constitutional] error . . .
that does not affect substantial rights must be disregarded.@); Reese, 33 S.W.3d at 243
(stating that criminal convictions should not be overturned based on non-constitutional
errors having either no influence or only a slight effect on the jury). 
Numerous witnesses testified about appellant=s prior bad acts and the escalating
nature of his behavior, from stealing his father=s vehicle, breaking into a
convenience store, starting fires, acting out in a sexual manner toward other
students, to the offense at hand, aggravated sexual assault.  In addition,
another of the State=s witnesses, Dr. Nicole Dorsey, a clinical psychologist with
the Children=s Assessment Center, testified as follows:

Q.:       If you had before you an individual and you learned that the
individual was violent and aggressive with authority figures, openly acted out
in pretty much every setting, school, and in his home, community, had set fires
on multiple occasions, and had advanced to the point of taking a pellet gun and
kidnapping an individual and raping them, based on your experience, do you see
some red flags there?








A.:       Absolutely.  This would be an individual I=d be extremely concerned about.  I=d be concerned about whether or not this person has
any remorse or empathy for other people in his life.  And those types of
behaviors, especially if they=re seen early
on in a child, they=re suggestive of someone who might later develop what
we call Antisocial Personality Disorder.  Some people think of it as being
psychopath really is what some people sometimes think of it, but the psychology
term is Antisocial Personality Disorder.  And that=s a lifelong condition of someone who doesn=t have any respect for authority, rules, or remorse
for their actions or behaviors.  I would be very concerned about someone like
that.

Dorsey went on to testify
that someone with such a disorder could become a very serious threat to society
as he gets older.  In light of this similar testimony,[3]
coupled with the testimony of several other witnesses regarding appellant=s numerous bad acts and his
increasingly violent behavior, any error in admitting Martin=s relatively brief testimony was
harmless.  See Reese, 33 S.W.3d at 243. 

Under
these circumstances, we overrule appellant=s second issue.

III.  Conclusion

Having
determined that appellant=s first issue was not preserved for our review and having
overruled appellant=s second issue, we affirm the judgment of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

 

Panel consists of Justices Yates,
Guzman, and Price.*

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Judge Parrot also testified at appellant=s trial, detailing the procedures he followed to
ensure that appellant=s statutory rights were observed.





[2]  Attention Deficit Hyperactivity Disorder.





[3]  See Valle, 109 S.W.3d at 509 (error in
admission of evidence cured when same evidence admitted without objection
elsewhere).





* 
Senior Justice Frank C. Price sitting by assignment.