Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00357-CR

Cody Cole **YTUARTE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A 08-72
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:   May 6, 2009

AFFIRMED

A jury convicted appellant Cody Cole Ytuarte of the offense of sexual assault of a child and assessed punishment at five years confinement. *See* TEX. PENAL CODE ANN. 22.011(a)(2)(A) (Vernon 2003). At trial, the sixteen-year-old victim, L.G., testified Ytuarte had sexual intercourse with her. At the time of the offense, Ytuarte was twenty-three years old and L.G. was his live-in girlfriend. In three appellate issues, Ytuarte argues the trial court abused its discretion in admitting extraneous offense evidence during the guilt-innocence phase of trial. We affirm.

## THE TRIAL

In opening statement, defense counsel informed the jury the evidence would show Ytuarte was a positive influence on L.G. because he "required" her to "live as a decent citizen" and "encouraged" her to "be a productive citizen." The defense counsel further informed the jury the evidence would show L.G. was testifying against Ytuarte to avoid confinement on several criminal charges pending against L.G. Immediately following the opening statement, the State sought the admission of extraneous offense evidence, including evidence that Ytuarte had encouraged L.G.'s involvement in several crimes. The State asserted defense counsel had opened the door to this extraneous offense evidence by creating a false impression about the nature of the relationship between Ytuarte and L.G. In response, defense counsel objected to the extraneous offense evidence based on Texas Rules of Evidence 401, 404(b), and 403, but these objections were overruled. The trial court determined the extraneous offense evidence was admissible to correct the false impression created by the defense.[1] The trial court also determined the probative value of the extraneous offense evidence substantially outweighed any prejudicial effect.

During the State's case-in-chief, the trial court admitted the following extraneous offense evidence. First, the trial court admitted evidence of a home invasion committed by Ytuarte, L.G., and others. This evidence showed that L.G. participated in the home invasion at Ytuarte's direction, and both Ytuarte and L.G. were charged with burglary, aggravated assault, and aggravated robbery in connection with the home invasion. This evidence consisted of testimony about the home invasion,

---

[1] During a bench conference the trial court advised defense counsel, "You cannot mislead the jury in the opening statement...You're giving half the story. You cannot do that. You cannot get up and say, my client is wonderful, and hide behind the fact that he may not be wonderful. You can't say that he did something positive and leave out the negative. That's improper. That's leaving the wrong impression with the jury. You know that."

photographs of the victims' injuries, and medical records detailing one of the victims' injuries. Next, the trial court admitted evidence that Ytuarte had been indicted for aggravated perjury. This evidence showed that L.G. participated in the offense at Ytuarte's direction, and both Ytuarte and L.G. were charged with aggravated perjury. This evidence consisted of testimony and video and audio recordings. Finally, the trial court admitted evidence that L.G. smoked marijuana with Ytuarte while she was living with him and that Ytuarte supplied the marijuana. This evidence consisted of testimony and photographs of marijuana and drug paraphernalia found in Ytuarte's apartment soon after L.G. moved out.

Defense counsel also elicited testimony from L.G. to support the defense argument that Ytuarte was a positive influence on L.G. Specifically, L.G. testified on cross-examination that Ytuarte insisted L.G. re-enroll in high school, get a job, and stop smoking crack. In closing argument in the guilt-innocence phase, the defense argued,

> I want you to remember [L.G.]. Did that look like a child to you? That's what I want you to ask yourselves...She told you herself before [L.G.] met [Ytuarte] that she had a relationship with two other men. What does that tell you? She was smoking. She stopped when she met [Ytuarte]. She had dropped out of high school. What did he require? That she go back to school. Did she have a job? No, she didn't. What was she doing? Nothing. She was with two other guys, and all her friends that she lived with, but what did [Ytuarte] require? He required her to go back to school.
>
> Now...those are steps to become a productive citizen....

On appeal, Ytuarte argues the trial court abused its discretion in admitting the extraneous offense evidence because (1) defense counsel's opening statement did not open the door and make extraneous offense evidence admissible; (2) the extraneous offense evidence was admitted only for

the purpose of showing character conformity; (3) and the probative value of the extraneous offense evidence was not substantially outweighed by the possibility of unfairly prejudicing the jury.

## TEXAS RULES OF EVIDENCE

The Texas Rules of Evidence favor the admission of relevant evidence. TEX. R. EVID. 402. Under Rule 401,[2] evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. TEX. R. EVID. 401. Because a criminal defendant should be tried only for the charged crime and not for his criminal propensities, evidence of extraneous offenses is normally inadmissible. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); TEX. R. EVID. 404(b).[3] However, evidence of other crimes, wrongs or acts may be admissible for other purposes, provided the evidence has relevance apart from character conformity. *See* TEX. R. EVID. 404(b). For example, extraneous offense evidence is admissible to rebut a defensive theory raised in the defense opening statement. *See Bass v. State*, 270 S.W.3d 557, 562 (Tex. Crim. App. 2008) (defense opening statement opened the door to the admission of extraneous offense evidence to rebut a defensive theory); *see also Powell v. State*,

---

[2] All references to "Rule" are to the Texas Rules of Evidence.

[3] Rule 404(b) provides,

> **(b) Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001) (defense opening statement can open the door to extraneous offense evidence).

However, even if evidence is relevant and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

## STANDARD OF REVIEW

A trial court has considerable discretion in its evidentiary rulings. "An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). When reviewing a trial court's evidentiary rulings, "the Court of Appeals cannot simply substitute its own decision for the trial court's." *Moses*, 105 S.W.3d at 627. "[A]s long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of the law applicable to the case, it must be upheld." *Winegarner*, 235 S.W.3d at 790 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

## DISCUSSION

In his first issue, Ytuarte argues defense counsel's opening statement did not open the door and make extraneous offense evidence admissible. In his second issue, Ytuarte argues the extraneous offense evidence was admitted only for the purpose of showing character conformity. We address these related issues together.

Ytuarte acknowledges a defense opening statement can open the door to the admission of extraneous offense evidence. *See Bass*, 270 S.W3d at 562 (defense opening statement opened the door to the admission of extraneous offense evidence). Nevertheless, Ytuarte argues the extraneous offense evidence was not admissible in his case because (1) the comments made in his opening statement did not undermine an elemental fact, and (2) he admitted guilt at trial and, therefore, the State had no need to rebut the comments made in his opening statement. In essence, Ytuarte contends his argument to the jury is distinguishable from the arguments in those cases wherein the State has been allowed to rebut a defensive theory because Ytuarte's "defensive theory" amounts to an admission of guilt. In other words, Ytuarte characterizes his "defensive theory" as a plea for jury nullification. Jury nullification has been defined as the jury's power to acquit a defendant out of refusal to apply the law to facts clearly evidencing a criminal violation. *United States v. Burkhart*, 501 F.2d 993, 997 n.3 (6th Cir. 1974); *see also Mouton v. State*, 923 S.W.2d 219, 221-22 (Tex. App.—Houston [14th Dist.] 1996, no writ).

We agree that Ytuarte's jury nullification argument is somewhat different from the arguments made in cases wherein the defendant argued a legally recognized theory of defense. Nevertheless, we are not persuaded that by appealing to the jury to refuse to apply the law of sexual assault of a child to facts evidencing commission of that crime, Ytuarte was somehow authorized to leave a false impression with the jury and escape the consequences of opening the door to evidence which would rebut this false impression.

Furthermore, the admission of extraneous offense evidence is not limited to situations in which a false impression undermines an elemental fact in the case, nor does it necessarily depend

on the type of defense presented. In *Bass*, the court of criminal appeals stated "[t]he issue does not necessarily turn on the type of defense presented, but on whether the extraneous-offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact."*Bass*, 270 S.W.3d at 563 n.8; *see also Montgomery*, 810 S.W.2d. at 387-88. Thus, the determinative issue is whether the extraneous offense evidence has relevance apart from character conformity. *See Bass*, 270 S.W.3d at 563 n.8.

Evidence is relevant if it "provides a small nudge toward proving or disproving some fact of consequence." *Montgomery*, 810 S.W.2d at 376. Here, the defense argued L.G. was a troubled teenager and Ytuarte was a positive influence in her life. Evidence that Ytuarte repeatedly involved L.G. in criminal activity rebutted the defense's argument that Ytuarte was encouraging L.G. to be a "decent" and "productive" citizen. Thus, the trial court could have reasonably concluded the extraneous offense evidence had relevance apart from character conformity.

In his third issue, Ytuarte argues the trial court should have excluded the extraneous offense evidence under Rule 403. When undertaking a Rule 403 analysis, courts evaluate two factors: (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); TEX. R. EVID. 403. Courts then balance those factors against four counter-factors: (1) unfair prejudice, *i.e.*, any tendency of the evidence to suggest decision on an improper basis; (2) confusion of the issues, *i.e.*, any tendency of the evidence to confuse or distract the jury from the main issues; (3) misleading the jury, *i.e.*, any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) undue delay or needless presentation of

cumulative evidence, *i.e.*, the likelihood that presentation will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-42; TEX. R. EVID. 403.

In arguing the trial court should have excluded the extraneous offense evidence under Rule 403, Ytuarte mentions only the first and the fourth counter-factors—unfair prejudice and undue delay or needless presentation of cumulative evidence. "Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, such as an emotional one. *Casey v. State*, 215 S.W.3d 870, 879-80 (Tex. Crim. App. 2007). Evidence might be unfairly prejudicial if it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Id.* at 880. "Undue delay" and "needless presentation of cumulative evidence" concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision. *Id.*

Here, the trial court could have reasonably concluded that both the inherent probative force of the extraneous offense evidence and the State's need for the evidence were considerable. The extraneous offense evidence, which showed Ytuarte promoting L.G.'s participation in criminal activity, tended to make less probable Ytuarte's argument that he was encouraging L.G. to be a "decent" and "productive" citizen. As to the counter-factors, the trial court could have reasonably concluded that the extraneous offense evidence did not have a tendency to suggest decision on an emotional or improper basis. Additionally, the trial court could have reasonably concluded that the extraneous offense evidence did not cause undue delay or needless presentation of cumulative evidence. Streamlining Ytuarte's trial, which lasted only two days, was not a compelling factor in this case. After balancing the various Rule 403 factors, the trial court could have reasonably

concluded that the probative value of the evidence was not substantially outweighed by the counter-factors.

Having considered all of Ytuarte's arguments, we conclude the trial court's admission of the extraneous offense evidence did not lie outside of the zone of reasonable disagreement and was not error.

### HARM ANALYSIS

However, even assuming it was error to admit the extraneous offense evidence, we could not reverse Ytuarte's conviction unless the error affected his substantial rights. Under Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error "that does not affect substantial rights must be disregarded." *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

After examining the record as a whole, we conclude the extraneous offense evidence admitted had little or no effect on the jury. When the extraneous offense evidence was first admitted in the guilt-innocence phase of trial, the trial court gave the jury a limiting instruction regarding the purpose of the evidence, thereby minimizing the potential for improper influence on the jury. Thereafter, the jury was charged on the proper use of the extraneous offense evidence. Although mentioned by the State in its guilt-innocence closing argument, the extraneous offense evidence was not overemphasized. Additionally, the minimum punishment the jury could have assessed was two years confinement. Despite the State's request for the maximum of twenty years confinement, the

jury assessed punishment at five years confinement. Furthermore, there was strong evidence of guilt in this case. *See id.* at 360. ("Though not dispositive, the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b)."). As argued on appeal, Ytuarte essentially admitted guilt when he made a plea for jury nullification. We conclude Ytuarte's substantial rights were not affected by the admission of the extraneous offense evidence, and therefore, any error must be disregarded.

## Conclusion

The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH