NO. 07-08-0264-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 26, 2009

_____

JUAN C. GUEVARA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-418,012; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Juan C. Guevara, was convicted by a jury of two counts of aggravated sexual assault.[1] Punishment was assessed by the jury at ninety-nine years confinement as to each count. The court ordered the sentences to run

---

[1]Tex. Penal Code Ann. § 22.021(a)(1)(B)(v) and (a)(2)(B) (Vernon Supp. 2008).

concurrently. Presenting three issues, Appellant maintains (1) the trial court abused its discretion in overruling his objections and admitting outcry witness testimony contrary to the requirements of article 38.072 of the Texas Code of Criminal Procedure; (2) the trial court abused its discretion in overruling his objections and admitting inadmissible hearsay evidence as a prior inconsistent statement contrary to the requirements of Rule 613(a) of the Texas Rules of Evidence; and (3) he was harmed by the trial court's errors in admitting inadmissible hearsay. As presented by the State, the sole issue is whether the trial court abused its discretion by admitting a portion of the Children's Advocacy Center (CAC) videotape and the testimony of Andrea Chamberlain, the forensic interviewer. We affirm.

## Background Facts

The indictment in this case alleged that on two separate dates in 2005, Appellant did intentionally and knowingly cause the mouth of Julian, a child who was then and there younger than 14 years of age, and not the spouse of Appellant, to contact the sexual organ of Appellant. Julian is the son of Appellant's half-sister, Griselda. At the time of the offense, Appellant was seventeen years old and Julian was four years old.

In 2005, Griselda and Julian lived in Plainview and they frequently visited her mother, Natividad, in Lubbock. Natividad was Appellant's step-mother and in 2005, he lived with her, his half-brother, Flavio, and his half-sister's child, Cesar.[2]

---

[2] Appellant is Cesar's "bruncle (brother/uncle)." Cesar was conceived as the result of an incestuous relationship between Appellant's father and his half-sister, Griselda. Because Griselda was 14 when Cesar was born, he was raised by Natividad. According to trial testimony, Julian was also sexually assaulted by

2

In the summer of 2007, while Griselda was at a conference in Dallas, Julian and his younger sister, Leslie, were visiting their paternal grandmother, Manuella, in Petersburg. Julian was caught by his grandmother performing inappropriate sexual acts with one of his young cousins. Julian explained to his grandmother that Appellant and Cesar had been doing the same things to him. Manuella called Griselda to inform her of the abuse. Griselda drove to Petersburg to pick up her children and then drove to Lubbock to confront Appellant and Cesar about the allegations. Thereafter, she, Julian, and Leslie returned to their home in Midland, where she reported the abuse to the Midland Police Department.

The Midland Police Department arranged for Julian to be examined by a sexual assault nurse examiner and for a forensic interview with the CAC. Chamberlain questioned Julian about the abuse. The interview was videotaped. Nancy Compton, an investigator with the Midland Police Department, advised the Lubbock Police Department that a sexual assault involving a child, which had occurred in Lubbock County, had been reported. The case was assigned to Lahoma Moran, a Juvenile Division Detective with the Lubbock Police Department, for an investigation.

Julian made allegations that Appellant first molested him during the summer of 2005, when he was only four years old. He also reported that the molestation occurred in the summers of 2006 and 2007. According to Detective Moran's testimony, after she attempted to contact Appellant through a relative, he came to the police station to

Cesar, who was fourteen at the time of trial.

3

voluntarily give a statement. After *Miranda* warnings were given and waivers were obtained, Appellant confessed in writing that he first touched Julian in the summer of 2005. He also admitted to multiple occurrences of his sexual organ making contact with Julian's and Leslie's mouths.[3] During the investigation, Detective Moran also interviewed Griselda and Manuella. Based on the findings from the investigation, Appellant was indicted on two counts of intentionally and knowingly causing Julian's mouth to contact his sexual organ.

Cori Armstead performed a sexual assault exam on Julian. The exam revealed that Julian had healed abrasions to his anal area but Armstead was unable to determine the cause of the injuries. During the exam, Julian claimed to have been anally penetrated "hundreds" of times. However, there was no mention of oral contact. Armstead explained the difficulty in obtaining evidence of oral abuse especially, as in this case, where outside a ninety-six hour time frame there would be no fluids to collect.[4]

Chamberlain testified that she interviewed Julian for approximately one hour. He was quiet, but willing to answer her questions truthfully. After she testified that Julian had made a full "outcry" to her, the defense urged the following objections:

---

[3]Although Appellant's written statement was redacted to remove extraneous offenses as to Julian's younger sister, Leslie, the statement introduced into evidence as State's Exhibit 2 provided, "I had Leslie and Julian put their mouth on my penis and I would come in their mouth. I guess that I had them do that about seven times total."

[4]After Armstead's testimony and outside the jury's presence, the defense reurged its objection on introduction of evidence of anal penetration as being prejudicial extraneous conduct and moved for mistrial. However, the issue of admission of extraneous offenses is not raised in this appeal.

4

[y]our Honor, I'm going to object at this time. The State appears to be asking for evidence or testimony of an outcry made to the CAC interviewer. This is not an outcry situation. There has been no notice of any outcry, or intent to use an outcry statement given under the rules. Also, Judge, under 38.071 of the Code of Criminal Procedure, testimony of child who is victim of offense, I think they're trying to come in under – under that, and in this case, it's clearly not admissible.

At this point in time, the Court has not made the proper determination that the child is unavailable, under 13, things of that nature. So I'm going to object on both grounds of outcry, that it's an improper outcry, and under 38.071, that it's not admissible . . . .

The trial court overruled the objections.[5] Chamberlain then testified that she was concerned that Julian suffered anal penetration and penile penetration of the mouth. Defense counsel's objections to questions concerning the specifics of the abuse were sustained. After explaining CAC procedures, Chamberlain answered affirmatively and without objection that Julian's answers during the interview were consistent with information she had been provided by law enforcement.[6]

Following Chamberlain's testimony, Julian was sworn in outside the jury's presence. He was also questioned by the trial court about telling the truth. After the jury returned, the State commenced its questioning. The gist of Julian's direct testimony was that Appellant put his sexual organ into Julian's mouth "lots of times," while he would visit his maternal

---

[5]Article 38.071, entitled "Testimony of Child Who is Victim of Offense," applies only in a hearing or proceeding in which the court determines that a child younger than thirteen is unavailable to testify in the presence of the defendant.

[6]Although the defense urged a hearsay objection to a later question, "Your information was consistent with the investigation of law enforcement; is that correct"?, Chamberlain's answer had already come in without objection several questions earlier. *See Reyes v. State*, 84 S.W.3d 633, 638 (Tex.Crim.App. 2002).

grandmother in Lubbock. Julian testified that when Appellant would put his "wee-wee" in his mouth, pee would come out and "it was gross." The State also asked Julian what Appellant was doing with his hands during the oral contact and Julian motioned that Appellant was masturbating. The State followed up with "did he do that more than one time?" After Julian responded, "[n]o," the State admitted to asking a bad question and then asked, "did it happen one time, two times, or more than one time, or more than that." Julian answered, "[m]ore than that."

During cross-examination, defense counsel asked the following leading question:

This question is only about [Appellant], okay. You said that [Appellant] put – [Appellant] put his wee-wee in your mouth. That was only one time?

Julian answered, "[u]h-huh," and defense counsel stated, "[y]es, that was only one time. Thank you."

Several questions later, defense counsel asked specific questions about Cesar putting his "wee-wee" in Julian's mouth and then concluded her examination by asking Julian, "[a]nd [Appellant] did it one time; is that right"? Again, Julian answered "[u]h-huh."

During redirect examination, the State expressed confusion and asked Julian for clarification with the following question:

[i]f we're talking about when [Appellant] would put his wee-wee in your mouth, you told [defense counsel] that it just happened one time. Was it one time, two times, or more than that?

6

Julian answered, "[i]t was one time." He remembered testifying earlier that it was more than once but admitted he was confused and scared.

Immediately following Julian's testimony, the State expressed confusion and requested permission to review the CAC videotape for redactions and asked to recall Chamberlain to admit the redacted portion of the videotape for clarification of Julian's testimony. Defense counsel objected based on article 38.071 of the Code of Criminal Procedure and maintained that the videotape was inadmissible. After a hearing outside the jury's presence, the trial court decided to allow the State to play a redacted version for the jury amounting to less than one minute to clarify Julian's testimony on the number of occurrences of abuse. Defense counsel vehemently objected that the videotape was inadmissible on various grounds, including hearsay and impeachment by the State of its own witness. Appellant's objections were overruled and Chamberlain was recalled to authenticate the videotape. The redacted version of the videotape was played for the jury. The jury heard Chamberlain ask Julian how many times "that" happened and Julian's answer, "lots of times." The jury also heard Chamberlain ask how many instances of anal penetration occurred to which Julian also answered "lots of times."

The defense lodged several hearsay objections to Chamberlain's testimony on the basis that Julian's in-court testimony was not *consistent* with the contested out-of-court statement Julian made to Chamberlain during her interview. The trial court overruled those objections.

During Chamberlain's cross-examination, defense counsel suggested that Julian may have exaggerated the number of occurrences. Chamberlain responded that children do not tend to exaggerate about sexual abuse. During redirect examination, she testified that she explored the different occurrences with Julian and concluded he had been abused by Appellant "[l]ots of times."

After the State rested, defense counsel moved for an instructed verdict alleging the State had failed to prove more than one instance of oral contact. The motion was denied.

During closing arguments, defense counsel intimated that Appellant's entire family suffered from long-term systemic sexual abuse. He also suggested that Julian was caught acting inappropriately with his cousin and that he wanted to shift the attention to Appellant. Defense counsel argued that Julian was confused and lying. During its closing argument, the State relied heavily on Appellant's confession.

The jury found Appellant guilty of both counts of the indictment and assessed punishment at ninety-nine years confinement as to each count. During sentencing, the State moved for the sentences to run consecutively, which the trial court denied.

**Contentions of the Parties**

The crux of Appellant's argument stems from the trial court's rulings admitting Chamberlain's testimony and the redacted videotape of Julian's interview with her. Appellant argues the trial court's rulings constituted an abuse of discretion which caused

8

him harm. According to Appellant, without the objected to evidence, the State could not have proven he was guilty of both counts of the indictment alleging his sexual organ made contact with Julian's mouth. The State postulates there was no error in the admission of the challenged evidence and, alternatively, that if the trial court erroneously admitted the evidence, the error was harmless.

**Standard of Review**

We review a trial court's decision to admit evidence over objection under an abuse of discretion standard. *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex.Crim.App. 2008). *See also Winegarner v. State*, 235 S.W.3d 787, 790 (Tex.Crim.App. 2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Winegarner*, 235 S.W.3d at 790 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g)). This is so because the trial court is usually in the best position to make the call on whether certain evidence should be admitted. *Winegarner*, 235 S.W.3d at 790 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)).

**Analysis**

After Chamberlain testified that Julian made a full "outcry" to her, defense counsel strenuously objected on the ground that Chamberlain was not a proper outcry witness. Counsel argued that the State had not given notice of an outcry witness as required by

article 38.072 of the Texas Code of Criminal Procedure and that Chamberlain's testimony was not admissible.

The State takes the position that Chamberlain's testimony was not offered into evidence as an outcry witness. According to the State, Appellant had notice that Chamberlain was designated as an expert witness about sexual abuse and child abuse. The State argues that the challenged evidence was admissible under Rule 801(e)(1)(B) of the Texas Rules of Evidence as a prior consistent statement offered to rebut an express or implied charge against the declarant of recent fabrication.

Regarding the videotape, Appellant correctly maintains it does not qualify as an outcry statement pursuant to article 38.072. *See Divine v. State*, 122 S.W.3d 414, 418 (Tex.App.–Texarkana 2003, pet. ref'd). However, the State contends that it did not offer the videotape as evidence of an outcry. Just as with Chamberlain's testimony, the State argues that the videotape was offered as a prior consistent statement under Rule 801(e)(1)(B) of the Texas Rules of Evidence.

The prior statement at issue is Julian's statement to Chamberlain during their interview that Appellant caused his sexual organ to make contact with Julian's mouth "lots of times." The State urges this statement is *consistent* with Julian's testimony while Appellant categorizes the statement as a prior *inconsistent* statement.[7] We agree with the

---

[7]As discussed earlier, Julian's direct testimony that Appellant put his sexual organ in Julian's mouth "lots of times" contradicted his testimony during cross-examination that it only happened once.

10

State that Julian's prior statement to Chamberlain is a prior consistent statement that was admissible under Rule 801(e)(1)(B) of the Texas Rules of Evidence.

Per Rule 801(e) of the Texas Rules of Evidence, prior consistent statements that meet the requirements of that rule are not hearsay. Specifically, the rule provides that a prior statement is not hearsay if the declarant testifies at trial . . . and is subject to cross-examination concerning the statement, and the statement is:

> consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

The rule was analyzed in *Hammons v. State*, 239 S.W.3d 798 (Tex.Crim.App. 2007). Relying on *Tome v. United States*, 513 U.S. 150, 156-58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the Court set forth the four requirements which must be met in order for a prior consistent statement to be admissible. *Hammons*, 239 S.W.3d at 804 n.12. Those requirements are (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent; (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id.* at 804.

11

Regarding the first requirement, Julian, the declarant, testified at trial and was subject to cross-examination. According to *Hammons*, the rule sets forth a minimal foundation for the second requirement of an implied or express charge of fabrication or improper motive. *Id.* There need only be a suggestion of fabrication to give the trial court substantial discretion to admit a prior consistent statement under the rule. *Id.* at 805. In assessing whether the cross-examination of a witness makes an implied charge of fabrication or improper motive, the trial court considers not only the totality of the questioning, but may also consider clues from voir dire, opening statements, and closing statements. *Id*. at 808.[8]

During Julian's cross-examination, defense counsel elicited multiple occurrences of sexual acts committed against Julian by other perpetrators and minimized Appellant's conduct. During closing arguments, defense counsel suggested that Julian shifted the blame to Appellant after his grandmother caught him acting inappropriately with one of his cousins. The argument continued that Julian was confused and defense counsel suggested Julian had lied. Given the minimal foundation required by *Hammons*, the second requirement is satisfied.

The State, as proponent of the prior statement, was charged with establishing that the statement was consistent with Julian's challenged in-court testimony. Defense counsel

---

[8]The force of cross-examination depends upon the tone and tenor of the questioning combined with the cross-examiner's demeanor, facial expressions, pregnant pauses, and other nonverbal cues. *Hammons*, 239 S.W.3d at 808. These factors are not discernable from a cold record.

sought to challenge Julian's testimony that Appellant caused his sexual organ to contact his mouth "lots of times." Both Chamberlain's testimony and the redacted videotape confirm Julian's prior in-court statement that Appellant engaged in the charged conduct "lots of times." Thus, the prior statement was consistent with Julian's challenged in-court testimony and the third requirement is satisfied.

Finally, the prior statement must have been made at a time prior to the time the supposed motive to falsify arose. A reading of the record does not disclose a clear motive by Julian to falsify or fabricate the allegations against Appellant. Rather, during his testimony about events that had occurred three years earlier when he was only four years old, Julian expressed confusion recollecting the abuse. A challenge to a witness's credibility or memory may be sufficient to satisfy the requirements for admissibility of a prior consistent statement. *Id.* at 805. Although there is no bright line rule between a general challenge to memory or credibility and a suggestion of fabrication, the trial court determines whether the tenor of cross-examination would lead a witness to fabricate. *Id.* Because the statements made by Julian to Chamberlain and recorded on the videotape were made prior to trial where Julian expressed confusion and difficulty recalling facts, the fourth requirement for admission of a prior consistent statement has been met.

We conclude that Chamberlain's testimony and the redacted videotape were admissible under Rule 801(e)(1)(B) of the Texas Rules of Evidence and that the trial court did not abuse its discretion in admitting the evidence. A trial court's ruling on the admission

of evidence will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *See Amador v. State*, 275 S.W.3d 878, 878-79 (Tex.Crim.App. 2009). Once the evidence was properly before the jury, it was in the unique position of evaluating credibility and demeanor of the witnesses and the weight to give contradictory testimony. *Johnson v. State*, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000). Consequently, Appellant's three issues are overruled.

**Harm Analysis**

Assuming, *arguendo*, that the challenged evidence was improperly admitted, the erroneous admission of evidence can be rendered harmless if other evidence at trial is admitted without objection and it establishes the same facts the inadmissible evidence sought to establish. *Stoker v. State,* 788 S.W.2d 1, 14 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Crocker v. State,* 573 S.W.2d 190, 201 (Tex.Crim.App. 1990). Appellant's confession clearly stated that he caused Leslie and Julian to put their mouths on his penis "about seven times total." Even though the confession was not specific as to whether that was seven times for each child, or one time for one child and six times for the other, the jury was free to conclude from that statement that he caused Julian's mouth to contact his penis on more than one occasion. Therefore, regardless of the trial court's ruling, Appellant occasioned no reversible harm.

## Conclusion

Having concluded there was no error in the trial court's decision to admit the challenged evidence, we overrule Appellant's issues. Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.