Opinion issued May 24, 2016



In The

# Court of Appeals

For The

## First District of Texas

—————————————

## NO. 01-15-00768-CR

—————————————

### TIMOTHY DESHUN WATERS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Case No. 1477950

---

## MEMORANDUM OPINION

A jury convicted appellant, Timothy Deshun Waters, of aggravated sexual assault of a disabled person,[1] enhanced by a prior felony conviction,[2] and the trial court assessed his punishment at twenty years' confinement. In two points of error, appellant contends that the trial court erred in (1) admitting hearsay evidence of the complainant's outcry statement and (2) allowing the prosecutor to make an improper plea for law enforcement during the State's closing argument. We affirm.

## Background

D.H., the complainant, has a full-scale IQ of 53 and has been diagnosed with bipolar disorder, schizophrenia, and mental retardation. In 2012, when D.H. was seventeen years old, she was placed in the home of Rita Stevenson, a foster parent for mentally challenged adults.

During this time period, appellant was living with his sister, Rebecca Thompson, who was friends with Stevenson and lived in the same neighborhood. Stevenson also cared for Thompson's children during the day while Thompson attended school. At trial, Stevenson testified that D.H. was fearful of people whom she did not know, and that although she was initially scared of appellant, she became comfortable with him over the course of their visits to Thompson's home. Stevenson

---

[1]    *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(C) (West Supp. 2015).

[2]    Appellant was convicted of the felony offense of possession of cocaine in Mississippi in 2007.

2

further testified that D.H. never left the house alone except to walk to the nearby store.

On the afternoon of October 20, 2013, D.H. walked out of the house. When she did not return after half an hour, Stevenson became worried and drove around the neighborhood searching for her but was unable to find her. Stevenson testified that, when D.H. returned home a couple of hours later, she was crying, red, sweaty, disheveled, and in a panic, and her blouse was torn. When the State asked Stevenson what D.H. told her, trial counsel objected to the testimony as hearsay. The State argued that her testimony was admissible as an exception to the hearsay rule because she was an outcry witness, and the trial court overruled the objection. Stevenson testified that D.H. told her that appellant had called the house earlier in the day and told her that his sister's kids wanted to see her, and asked her to meet him at the park.[3] D.H. said that she met appellant at the park and that they then walked back to Thompson's home. After they arrived, appellant closed the garage door and locked D.H. in the garage with him. Stevenson testified that D.H. told her that appellant began kissing and fondling her, and that he unbuttoned her pants. Appellant then bent D.H. over a weight bench, pushed her neck down, and inserted his penis inside her vagina and anus. D.H. repeatedly told appellant to stop but to

---

[3] According to Stevenson, D.H. loved children and animals.

3

no avail. Appellant then told her to pull her clothes up and go home because her mother would be looking for her.

Stevenson testified that when she took D.H. into the bathroom, she saw that D.H.'s panties were wet and soiled with blood and that the flesh of her vagina and anus were torn. Stevenson called the police who arrived approximately five minutes later.

When Deputy Kerry Joseph of the Harris County Sheriff's Office arrived at Stevenson's home, he saw D.H. sitting in a chair on the front porch. He testified that D.H. was crying uncontrollably and that Stevenson had to console her before he was able to get her statement. Deputy Joseph testified that when he asked her what had happened, D.H. gave him a detailed statement of the incident. He further testified that D.H. was distraught and crying while she gave her statement, and that she did not want Deputy Joseph to mention appellant's name because she thought he was coming.

When the State asked Deputy Joseph what D.H. told him, trial counsel objected to the testimony as hearsay, but the trial court admitted the evidence under the excited utterance exception to the hearsay rule.[4] Deputy Joseph testified that D.H. told him that she went to appellant's residence, and that when they were in the

---

[4] *See* TEX. R. EVID. 803(2).

garage, appellant began touching and kissing her but that she did not want him to. D.H. told Deputy Joseph that, before she knew it, the garage door was down and appellant had pulled her pants down and penetrated her vagina with his penis. Deputy Joseph testified that D.H. stated that she cried out for him to stop but that he refused and held her against her will. Deputy Joseph further stated that once Stevenson told him that D.H. was bleeding from her vagina, he immediately called an ambulance and D.H. was transported to the hospital for a sexual assault examination. Stevenson subsequently showed Deputy Joseph where appellant lived and appellant was arrested.

Patricia Orekoya, a forensic nurse, testified that she interviewed D.H. and performed a sexual assault nurse examination (SANE) of her on the evening of October 20, 2013. Orekoya testified that D.H. told her that she had gone with appellant to his sister's house, and that appellant had pulled her pants down and inserted his penis in her vagina and anus, that it hurt, and that she told him to stop. Orekoya testified that the exam revealed that D.H.'s female sexual organ and anus were torn and bleeding. Orekoya took several swabs for testing purposes. Orekoya's SANE report was admitted into evidence without objection as State's Exhibit 10.

D.H. testified that appellant called Stevenson's house and told her to meet him at the park. Once D.H. got there, she and appellant walked to his sister's house. D.H. testified that when it was dark, appellant took her in the garage and penetrated

5

her vagina with his penis, and that she told him that he was hurting her and to stop but that he did not stop. D.H. testified that she eventually found her way home and told Stevenson what had happened.

After both sides rested, the State made its closing argument during which the prosecutor argued to the jury, in relevant part,

> And what I'm going to ask all of you today is to be there for her, to be there for her because no one else could be there for her when this happened, when the defendant did this to her. And I ask you to do this for all the mentally challenged people in our community, our most vulnerable people in our community who can easily fall prey to people like the defendant . . . .

Trial counsel objected on the ground that the State was making an improper plea for law enforcement. The trial court overruled the objection. At the conclusion of trial, the jury found appellant guilty of the charged offense. This appeal followed.

## Discussion

In two points of error, appellant contends that the trial court erred by (1) allowing Deputy Joseph to testify regarding D.H.'s statement to him, and (2) overruling his trial counsel's objection to the State's improper jury argument.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). We will uphold the trial court's evidentiary ruling as long as it falls within the zone of reasonable disagreement and is correct under any theory of law applicable to the

case. *See id.* We also apply an abuse of discretion standard to a trial court's ruling on an objection to a jury argument. *Fahrni v. State*, 473 S.W.3d 486, 501 (Tex. App.—Texarkana 2015, pet. ref'd); *see also Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

**B. Admission of Deputy Joseph's Testimony**

In his first point of error, appellant contends that the trial court erred by allowing Deputy Joseph to testify about what D.H. told him regarding the incident because D.H.'s statements do not meet the requirements of the excited utterance exception to the hearsay rule.[5] Appellant further contends that the admission of Deputy Joseph's testimony was harmful because the jury heard from successive witnesses about what D.H. told them and, thus, strengthened the State's case.

---

[5] Appellant also argues that D.H.'s statement to Deputy Joseph was improperly admitted as an outcry statement because Deputy Joseph was not the proper outcry witness under article 38.072. Article 38.072 provides a statutory exception to the hearsay rule for outcry statements made by a person with a disability if the statement (1) describes the alleged offense, (2) was made by the person with a disability against whom the charged offense was allegedly committed, (3) and was made to the first person, eighteen years or older, other than defendant, to whom the person with a disability made a statement about the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(a) (West Supp. 2015). Additionally, the party intending to offer the statement must provide at least fourteen days' notice of its intention to do so as well as the name of the witness through whom it intends to offer the statement and a written summary of the statement, and the trial court must find that the statement is reliable based on the time, content, and circumstances of the statement. *See id.* § 2(b). However, the State did not invoke this exception, asserting instead that the statement was admissible as an excited utterance. *See* TEX. R. EVID. 801(d). Therefore, we need not address appellant's argument that the statement was inadmissible under article 38.072.

7

Hearsay is a statement, other than one made at the current trial or hearing, that a party offers into evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay statements are not admissible unless they fall within a recognized exception to the hearsay rule. TEX. R. EVID. 802. The "excited utterance" exception is one of the recognized exceptions to the hearsay rule and applies to "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement" caused by the event or condition. TEX. R. EVID. 803(2).

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider such factors as time elapsed and whether the statement was in response to a question. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). However, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *See id.* at 596. When the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded absent proof that the declarant did not in fact engage in a reflective thought process. *See Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005).

Appellant contends that D.H.'s statement to Deputy Joseph was inadmissible as an excited utterance because D.H. walked home after the alleged assault, spoke to Stevenson about what had happened to her, and waited for the police to arrive before giving her statement, and her statement was in response to Deputy Joseph's questions. Stevenson testified that approximately two hours elapsed between the time D.H. left the house and returned. It is unclear from the record how much time elapsed between the moment D.H. returned home and when Stevenson called the police. According to Stevenson, the police arrived approximately five minutes after she placed the call. Appellant argues that the time interval between the assault and D.H.'s statement to Deputy Joseph was long enough to permit reflective thought by D.H., and that there is no evidence in the record showing that D.H. did not, in fact, engage in a reflective thought process.

However, we need not decide whether the trial court erred in admitting D.H.'s statement under the excited utterance exception to the hearsay rule because error, if any, was harmless. Here, Stevenson and Orekoya each testified about what D.H. told them had happened, and appellant did not object to Orekoya's testimony or to the admission of her SANE report, both of which are virtually identical to one another in terms of the relevant substance, and similar in content to Deputy Joseph's testimony. Further, D.H. herself testified about what happened. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of

evidence is cured where the same evidence comes in elsewhere without objection."); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting any error in admitting evidence is cured where same evidence comes in elsewhere without objection).[6]  Additionally, although appellant objected to Stevenson testifying as an outcry witness at trial, the trial court overruled that objection and appellant does not challenge the admission of her testimony on appeal. Because Deputy Joseph's testimony about what D.H. told him included the same facts that were admitted into evidence without objection, we conclude that any error in admitting his testimony was harmless.  We overrule appellant's first point of error.

### C. Jury Argument

In his second point of error, appellant contends that the trial court erred in overruling his objection to the State's jury argument.  Specifically, he argues that the State made an improper plea for law enforcement which prevented the jury from reaching a verdict based on the facts presented at trial.

The record reflects that, after the State made its initial closing argument and trial counsel made his closing argument, the State made a rebuttal argument focusing, in part, on D.H.'s mental capacity, in which the prosecutor told the jury

> And what I'm going to ask all of you today is to be there for her, to be there for her because no one else could be there for her when this happened, when the defendant did this to her. And I ask you to do this

---

[6] We note that appellant acknowledges in his brief that Stevenson is the "correct outcry witness."

for all the mentally challenged people in our community, our most vulnerable people in our community who can easily fall prey to people like the defendant . . . .

Trial counsel objected on the grounds that the State was making an improper plea for law enforcement. The trial court overruled the objection.

The law requires a fair trial, free from improper argument by the State. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). In general, proper jury argument encompasses one of the following general areas: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In examining challenges to a jury argument, a court considers the remark in the context in which it was made. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). An argument exceeding the permissible bounds of these approved areas constitutes reversible error only if an analysis of the record as a whole shows the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Gonzalez v. State*, 337 S.W.3d 473, 483 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

11

A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). The State may also argue that juries should deter specific crimes by their verdict. *See Freeman v. State*, 340 S.W.3d 717, 729 (Tex. Crim. App. 2011). Further, the State may argue the impact of the jury's verdict on the community as well as the impact of the jury's verdict on narrower groups making up the "community." *See Borjan*, 787 S.W.2d at 56 (permitting jury argument on behalf of child victims of sexual abuse); *see also Freeman*, 340 S.W.3d at 729 (allowing argument on behalf of law enforcement officers and their families); *Strahan v. State*, 172 Tex. Crim. 478, 480 (Tex. Crim. App. 1962) (allowing jury argument on behalf of rights of highway drivers subjected to drunken drivers). These types of arguments are permissible because the jury is reminded of the effect that its verdict may have on the rights of a particular segment of the community. *See Borjan*, 787 S.W.2d at 56.

Here, the State asked the jury to convict appellant to deter crimes against a particular group, i.e., mentally challenged individuals, and argued that this segment of the community is vulnerable and can easily fall prey to people like appellant. The State's argument speaks to the impact of the jury's verdict upon a particular segment of the community and, therefore, was a proper plea for law enforcement. *See Borjan*, 787 S.W.2d at 56. The trial court did not abuse its discretion when it overruled trial

12

counsel's objection to the State's closing argument.  We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).